Not for Publication                    [Dkt. Nos. 24, 42 and 45]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| J.L., a minor, individually and by her Parents K.L. and J.L., | |
| Plaintiffs, | Civil No. 14-2666 RMB/JS |
| v. | **OPINION** |
| HARRISON TOWNSHIP BOARD OF EDUCATION AND CLEARVIEW BOARD OF EDUCATION, | |
| Defendants. | |

Appearances:

Jamie Epstein, Esquire
107 Cherry Parke, Suite C
Cherry Hill, New Jersey 08002

     Attorney for Plaintiffs

Brett E.J. Gorman, Esquire
Parker McCay PA
9000 Midlantic Drive, Suite 300
Mt. Laurel, New Jersey 08054

     Attorney for Defendants

**Bumb,** U.S. District Judge:

     On May 14, 2014, Plaintiffs, K.L. & J.L., individually and

on behalf of their minor child, J.L., filed a First Amended

1

Complaint against Defendants Harrison Township Board of Education ("Harrison") and Clearview Board of Education ("Clearview") (collectively "Defendants" or "School District") seeking relief under three separate statutes:  the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq., ("LAD").[1]

In Count One of the Complaint, Plaintiffs sought an award of "reasonable attorney's fees and costs [pursuant to 20 U.S.C. § 1415(i)(3)(B)] because they are the parents of J.L., a child with a disability, who is the prevailing party in her . . . due process proceeding." Compl. at ¶ 21.  Count Two requested attorney's fees as the "prevailing party" under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a.  Finally, in Count Three, Plaintiffs asserted a claim under the LAD against Defendant Harrison only.

By Opinion and Order entered December 19, 2014, the Court dismissed the LAD claim without prejudice and converted Defendants' then pending Motion to Dismiss Counts One and Two

---

[1] The Complaint also mentions the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), which presumably was in error as there are no counts based on the ADA.

[Docket No. 24] to a Rule 56(a) Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d).  Consequently, Defendants' Motion to Dismiss converted to a Motion for Summary Judgment [Docket No. 39], and Defendants' filed a Certification in Support Thereof [Docket No. 41].  Plaintiffs filed a Motion for Summary Judgment Declaring Plaintiffs Prevailing Parties in the Administrative Proceedings [Docket No. 45] as well as a Motion to Amend the First Amended Complaint [Docket No. 42].  Upon completion of the briefing, the Court set the matter down for a hearing.

I.   Background

     The following facts are not in dispute.  Plaintiff, J.L., is a student with numerous severe disabilities that cause her to have cognitive, learning, hearing and vision disorders.  Plaintiff J.L. resided with her parents K.L. and J.L. in the Township of Mullica Hill, County of Gloucester, in the State of New Jersey, during the relevant time period.  Defendant Clearview, located in Mullica Hill, New Jersey, and Defendant Harrison, located in Harrison Township, New Jersey, are the "local educational authorit[ies]" as defined by 20 U.S.C. § 1401(a) and are responsible for ensuring compliance with all

federal mandates under IDEA and Section 504 for those residing in the Township of Mullica Hill, New Jersey.

A.   Request for Due Process

Plaintiffs contended that while attending public school, the Defendants failed to provide J.L. with a free and appropriate education, commonly referred to as a FAPE, in the least restrictive environment and failed to accommodate her disabilities.  As a result, Plaintiffs filed a Request for Due Process Hearing (the "Petition") on August 27, 2013, under IDEA, Section 504, and the ADA with the New Jersey Department of Education ("NJDOE").  Ex. D1.[2]  In their Petition, Plaintiffs set forth the following requests for relief:

A. Provide [JL.] with additional evaluations in areas of suspected disabilities, accommodations of her numerous disabilities, and appropriate IEP, appropriate placement and extended school year;

B. Provide [J.L.] with compensatory education;

C. Reimburse [J.L.'s] parents for any out of pocket expenses incurred in obtaining services and evaluations for [J.L.] that should have been provided by the school district(s).

D. Prohibit Harrison Township School District from allowing [J.L.'s] parents' consent.

_____

[2] Exhibits beginning with "D" refer to exhibits introduced at the hearing before this Court on July 14, 2015.

> E. All other remedies available under IDEA, 504 & ADA
> and reserve the right to bring all civil actions and
> against all other parties not within the jurisdiction
> of NJOAL.

Ex. D1, at 5.

B.   <u>Motion for Summary Decision Before the ALJ</u>

Approximately four months after the filing of the Petition, on December 23, 2013, Defendants filed a Motion for Summary Decision claiming that due to their Offers of Judgment dated December 6, 2013, and December 12, 2013, as well as concessions they made on the record on December 17, 2013, the Petition was moot and the matter should be dismissed.  Ex. D19.  Plaintiffs opposed the Motion.  Ex. D20.

C.   <u>ALJ Decision</u>

On January 28, 2014, the Honorable John Schuster, ALJ, heard oral argument on Defendants' motion.  <u>See</u> Transcript, Docket No. 48-2.  By a written decision dated that same day, Judge Schuster dismissed the Petition, finding:

> . . . that the relief sought in the petition has been
> met by the respondents at least as to the issues over
> which this court has jurisdiction.  By voluntarily
> agreeing to provide all the relief specifically sought
> in the petition, there no longer exists a controversy
> upon which this court can rule.  Once a case does
> become moot prior to judicial resolution, it is
> appropriate to dismiss the petition.  <u>Oxfeld v. N.J.</u>

5

State Bd. of Educ., 68 N.J. 301 (1975), Nini v. Mercer
County Comm. College, 202 N.J. 98, 117-118 (2010).

. . .

Based on the finding that petitioner has received
by way of offer an affirmative response to all of its
demands as set forth in the petition, **I CONCLUDE** that
controversy no longer exists, meaning this case has
become moot and therefore the petition should be
**DISMISSED.**

Ex. D23.  Plaintiffs did not appeal Judge Schuster's decision.

> D.   District Court Complaint

On April 27, 2014, Plaintiffs filed a Complaint with this

Court seeking attorneys' fees and costs as the "prevailing party"

under IDEA and Section 504.[3]  The issue of attorneys' fees is now

before this Court for summary disposition.

> II.  Summary Judgment

Summary judgment shall be granted if "the movant shows that

there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  A fact is "material" if it will "affect the outcome of

the suit under the governing law . . . ." Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if

it could lead a "reasonable jury [to] return a verdict for the

---

[3] As mentioned, Plaintiffs also sought relief under the ADA,
which this Court presumes was in error as no count alleged an ADA
violation.

nonmoving party." Id.   When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence: all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

In their initial submissions, the parties strongly disputed the course of conduct of the parties during the five-month period from August 23, 2013 (the filing of the Due Process Petition) to January 28, 2014 (Judge Schuster's decision).   In an attempt to understand exactly what happened, the Court instructed counsel for both sides to appear for a hearing.   The Court questioned both counsel and received various documents into evidence.[4]

A.   Findings of Fact

The following sets forth the Court's findings of fact:

On August 29, 2013, two days after the filing of the Petition, counsel for Defendants, Brett Gorman, Esq., sent an email to Jamie Epstein, Esq., counsel for Plaintiffs stating:

> It appears we get to meet again in your newly filed
> petition.   I just started wading through it and since

---

[4] The Court did not have either attorney swear under oath or affirm under penalty of perjury.   The Court viewed counsels' obligation under Rule 11 of the Federal Rules of Civil Procedure sufficient to make credibility decisions if necessary. Neither counsel objected to this procedure.

we already have a dialogue, I thought I would check in
to see what the parents are looking for and if you can
provide me with a settlement offer. Since school is
starting shortly, we may be able to work something out
quicker than usual. Let me know.

Thank you and I hope you are well.

Ex. D2.

The next day, August 30, 2013, Mr. Epstein responded:

We'll see after we get Answers and discovery from BOTH
respondents.

Id.

On September 4, 2013, Mr. Gorman replied:

If you do not want to discuss settlement at this point,
that is your call. But since it appears you are
looking for independent evaluations and the child is
staying in district, it would probably be in the best
interest of everyone to see if we cannot sort through
these issues. Let me know when you are ready to talk
settlement and I would happily entertain such
discussions.

In the interim, do you have any dates for mediation? I
think this matter would benefit from mediation and
delving into any remaining issues between the parties.
Let me know.

Id.

Mr. Epstein replied about an hour later:

We'll see after we get appropriate Answers and complete
discovery from BOTH respondents. Answers due 9/16,
Discovery due 9/11.

Id.

That same day, Mr. Gorman disputed that discovery was due on September 11 (15 days post-petition), writing:

> But we have been over the discovery issue in these cases before.  The discovery deadline is nowhere near September 11th and while the Districts will provide a timely response, nothing is due by the 11th.  We have not even had mediation scheduled yet.  So I think we can have discussions prior to the release of any and all discovery.  If not, at least provide me with some mediation dates so that we can delve into possible settlement.

Id.

Mr. Epstein did not respond.

On September 5, 2013, Defendants filed their Answer. Additionally, the Office of Special Education Programs of the New Jersey Department of Education ("OSEP") had opened a case in this matter on August 27, 2013, the date of the Petition.  Dr. Dolores Walther of OSEP advised Mr. Gorman by e-mail dated September 6, 2013, that if the parties wished to engage in mediation conducted by OSEP, he was to provide dates of availability.  Mr. Gorman replied:

> Again, thank you for reaching out.  The Districts have filed an answer and have requested mediation.  I informed Mr. Epstein, who represents Petitioners in this matter, that the District would like to proceed with mediation and requested available dates but I have not received mediation dates as of yet.  The District would very much like to proceed with mediation and is available prior to the end of the 30 day period.

9

I am cc'ing Mr. Epstein to this email so he is aware of my communication in response to your email and the District's position regarding mediation.  I will contact Ms. Arnold with dates, when I receive same from Petitioners.

Ex. D3.

Mr. Gorman sent a subsequent e-mail which was inexplicably not recorded (only the header was saved), to which Mr. Epstein simply responded:

Mr. Gorman;

Pls read the petition.

<u>Id.</u>

Minutes later, Mr. Gorman replied:

I have made numerous attempts to obtain either mediation dates or a settlement proposal from you.  You have refused on every occasion even after I informed you that the Districts would be willing to review the relief set forth in your petition.  Your unwillingness to enter into good faith negotiations is noted and memorialized in our email communications.  I will provide dates the Districts are available for mediation to OSEP.

<u>Id.</u>

Minutes later, Mr. Epstein wrote:

p.s. pls don't forget my discovery, you can just send it on a cd, thx.

<u>Id.</u>

The parties appeared before the Honorable John R. Futey, ALJ, as part of a settlement conference on October 7, 2013.  <u>See</u> Ex. D4.  According to Mr. Gorman, (as he represented to this Court as well as his correspondence to the Honorable Patricia Kerins, <u>infra</u>,) Plaintiffs made an "extraordinary settlement demand" that day that was not set forth in the Petition – that is, a neuro-psychologist of Plaintiffs' choice should consult and provide training to the District's IEP Team up to 6 hours per month as to all aspects of J.L.'s special needs.  <u>See</u> Ex. D10. According to Defendants, this extraordinary relief was not available under IDEA.  Thus, Defendants wrote to Judge Kerins on October 11, 2013, asking her to "order Petitioners to amend the Petition for Due Process to include this extraordinary relief and also order a briefing schedule [to address the availability of such relief]."

Ex. D4.

In Mr. Gorman's view,

. . . the resolution of this issue [would] likely result in settlement of the entirety of the case as the Districts have indicated multiple times to Petitioner's counsel, prior to and at the settlement conference, a willingness to resolve Petitioners' concerns.  Finally, such action will avert needless litigation.

<u>Id.</u>

11

That same day, October 11, 2013, Plaintiffs filed a motion to dismiss Defendants' Answer as well as a motion to compel discovery. [Docket No. 47-6, at 56-63]. See also Ex. D7. On October 18, 2013, Defendants filed a reply along with a Motion to Amend the Answer. Judge Kerins conducted oral argument on October 29, 2013. Ex. D7.

Plaintiffs argued before Judge Kerins that the Answer failed to comply with N.J.A.C. 6A: 14-2.7(e)(1-4). Under this provision, a school district's response to a due process petition must include:

> (aa) an explanation of why the agency proposed or refused to take the action raised in the complaint;
>
> (bb) a description of other options that the IEP Team considered and the reasons why those options were rejected;
>
> (cc) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action; and
>
> (dd) a description of the factors that are relevant to the agency's proposal or refusal.

20 U.S.C. § 1415(c)(2)(B)(i)(I)(aa)-(dd); see also N.J.A.C. 6A:14-2.7(e)(1-4). This provision applies "if the district has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process

12

request." <u>N.J.A.C.</u> 6A:14-2.7(e).[5]  Judge Kerins agreed that

Defendants' Answer, which contained general admissions or

denials of allegations without substantive explanation did

not satisfy the IDEA requirements, but she found that

Plaintiffs had "failed to show that they have suffered any

substantive injury where respondents' have remedied the

violation by filing an amended answer."  <u>See</u> Ex. D7.

Plaintiffs had argued before Judge Kerins that "[b]y

withholding the required disclosures in its response, the

[Defendants] have hindered the [Plaintiffs'] ability to

substantiate their claims and assess [Defendants']

defenses."  From her decision, it appears Judge Kerins was

not persuaded.

     As to Plaintiffs' motion to compel discovery, Judge Kerins

rejected Plaintiffs' position that discovery was due within 15

days of the filing of the Petition and discovery demand.  She

found that because discovery had been turned over – at least by

November 16, 2013, consisting of about 2,500 pages – well in

advance of the "<u>five-day rule</u>," <u>N.J.A.C.</u> 1:6-10.1, five business

---

[5] It is unclear whether this provision actually applied here as
it appears there had been a dialogue prior to the filing of the
Petition.  See Ex. D2.  In any event, as set forth <u>infra</u>, Judge
Kerins found no "substantive injury."

days before the date of the hearing, Defendants had complied with their discovery obligations.  Ex. D7.  The hearing was not until December 17, 2013, and discovery had been turned over more than a month before, well in advance of the required five days.  By decision entered on December 2, 2013, Judge Kerins denied both of Plaintiffs' motions and granted Defendants' Motion to Amend the Answer.

In the meantime, before Judge Kerins' ruling, the parties had engaged in several telephone conferences with the court.  In particular, on November 15, 2013, the parties discussed the specific relief Plaintiffs were seeking.  Ex. D6.  As a follow-up to that call, Mr. Gorman wrote to Mr. Epstein on November 20, 2013:

> As per Judge Kerins' recommendation on the call of Friday, kindly specify the relief your client seeks in 2(a) and 2(b) of your petition.  Please also include specific evaluations requested by J.L., all specific IEP accommodations requested by J.L., and the specific compensatory education claim.
>
> Additionally, kindly specify the relief you mentioned on the November 15, 2013 call with Judge Kerins which is not set forth in your petition regarding oversight of J.L.'s IEP.

Ex. D6 (emphasis added), Ex. D9.

Mr. Epstein did not reply.

14

Against this backdrop, on December 6, 2013, Defendants made what they considered to be the first offer of judgment.

> [T]he District makes the following offer of judgment, pursuant to 20 U.S.C.A. §1415(i)(3)(B)(i), that reflects the only information you have provided to the Districts.  In regards to 2(a), the Districts offer to conduct additional evaluations, amend J.L.'s IEP to provide an appropriate placement, and offer extended school year.  In regards to 2(b), the Districts are willing to provide compensatory education to J.L.  In regards to 2(c), and this is the only area upon which you have provided specific information in your email dated November 11, 2013, the Districts will reimburse the parents for the approximate $5,587 worth of expenses for the evaluations.  In regards to 2(d), the Harrison Township School District agrees that it will not allow J.L.'s educational or health records to be disclosed to third parties without J.L.'s parents' consent.

Ex. D9.  Mr. Gorman wrote in that same letter:

> As that is the sole relief that you have set forth in the petition, and you have failed to further specify the relief sought at either of the telephone conferences with Judge Kerins or the settlement conference with Judge Futey, the Districts have made as expansive an offer of judgment as possible under the information it has received.  As the District has made an offer of judgment that meets the relief you seek in your petition, I will request that the hearing on December 17, 2013, be adjourned to permit you time to further specify the relief you seek.  Please consider this a settlement offer pursuant to 20 U.S.C.A. §1415(i)(3)(D)(i).

Id.

For the first time, December 9, 2013, Mr. Epstein responded with specific demands which incorporated "the recommendations of [Plaintiff's] experts."  Ex. D10.

In response, Defendants amended their offer of judgment on December 12, 2013, to address Plaintiffs' demands:

> Now that you have provided the Districts with more specific information through a letter dated December 10, 2013, the Districts amend their initial offer of judgment letter as follows.
>
> First, Clearview will conduct Independent Evaluations as follows:  an Assistive Technology, Speech Pathology, Physical Therapy, and Occupational Therapy.  Clearview will hold its annual IEP meeting that will include a transition plan within ninety (90) days of completion of the above referenced independent evaluations.
>
> Second, Harrison will reimburse the parents $5,587.00 for all out of pocket expenses for privately obtained evaluations and services.
>
> Third, Clearview will amend J.L.'s current Individualized Education Program to include the recommendations made by Dr. Nagle as set forth on pages 2 through 5 of his report dated December 10, 2013 with the following exceptions.  As to the use of an iPad, Clearview recommends waiting for the Assistive Technology evaluation to determine the appropriate use of the iPad.  As to videotaping J.L., Clearview will permit the parents to videotape J.L. but will not do so or be responsible for any videotaping of J.L.  The District will also require the signed release from the parents of any other students videotaped.  J.L.'s IEP will be amended to include the remainder of Dr. Nagle's recommendations.  Additionally, Clearview will amend J.L.'s IEP to include the recommendations set forth by Elizabeth Smith on pages 15 and 16 of her report dated November 8, 2013.

16

Fourth, Clearview will expunge Dr. Kandis Press's disagreement to eligibility as set forth on September 4, 2012 and Dr. Press will not have any direct or indirect communication with staff regarding J.L.

Fifth, Clearview will appoint Bryan Hendricks as case manager.  Mr. Hendricks will have obtained, at the end of the 2013-2014 school year, his Ph.D. with a specialty in neuropsychology.  Mr. Hendricks is also a Diplomat in the National Academy of Neuropsychologists.

Sixth, Harrison will provide J.L. with fifty (50) hours of compensatory education at mutually convenient locations, days and times during off school hours. J.L. may unilaterally reduce the frequency and duration of the compensatory education with 24 hours' notice to Harrison.

Seventh, Clearview and Harrison will not allow J.L.'s educational or health records to be disclosed to person(s) not authorized by FERPA or HIPPA without J.L.'s parents written consent.

Mr. Gorman wrote:

As the above offer does, indeed, exceed your request in the Due Process Petition, the Districts will request that Judge Kerins dismiss this matter as the Petition for Due Process is now moot.  Please consider the above an offer of judgment pursuant to 20 U.S.C.A. §1415(i)(3)(D)(i).

Ex. D13.  The December 6, 2013 offer and December 12, 2013 supplemental offer are hereinafter referred to collectively as the "Offer of Judgment."

On December 17, 2013, the parties appeared before Judge Kerins.  Mr. Gorman set forth on the record that Defendants were

17

willing to provide Plaintiffs with the full relief they were seeking. Mr. Epstein objected to Mr. Gorman's "discussing settlement offers with the Court." Transcript, at 9 [Docket No. 48-1]. At this juncture, apparently recognizing that a settlement was not forthcoming, Mr. Gorman responded that the terms were not in the nature of a settlement offer, but that the Petition was moot because the District had agreed to all of Plaintiffs' demands. Mr. Epstein, however, raised concern as to Judge Kerins' ability to hear the case in light of her knowledge of the settlement terms and intimated her possible recusal. Judge Kerins took the matter under advisement. She also directed Defendants to file a formal motion to dismiss based on mootness. [Docket No. 48-1].

On December 20, 2013, Judge Kerins recused herself. Thereafter, on December 26, 2013, Defendants filed a formal Notice of Motion for Summary Decision. Ex. D19. Defendants argued that because "they were already offering to exceed the relief Petitioners sought in their Petition for Due Process, and can consequently obtain at the Due Process Hearing . . . there [were] no issues for the Court to determine . . . and the Petition for Due Process [was] moot." Ex. D19, at 5-6. Plaintiffs opposed the motion, contending that the matter had not

settled (even though the issue before the ALJ was one of
mootness, not settlement).  Plaintiffs' opposition paper went one
step further:  it accused Mr. Gorman of violating Rule 3.3 of the
New Jersey Rules of Professional Conduct by not being candid with
the tribunal about the status of the case.

On January 14, 2014, the Honorable John Schuster III, ALJ,
conducted oral argument on Defendants' Motion for summary
decision.  Judge Schuster examined each of Plaintiffs' fifteen
demands that Plaintiffs contended Defendants had failed to meet.
Judge Schuster rejected each of Plaintiffs' arguments.  By
Decision dated January 28, 2014, Judge Schuster made the
following Findings of Fact:

> Based on the papers submitted and the arguments of
> counsel, I make the following findings.  Petitioner
> sought relief as specified in the petition.
> Respondent's position is it has voluntarily offered all
> the relief requested.  The details of the relief
> requested and what has been offered are set forth below
> using the petition as the basis for petitioner's
> demands.
>
> A.1  Relief: Provide J.L. with additional evaluations
> in the areas of suspected disabilities.  Offered:
> Respondent will complete evaluations regarding
> Assistive technology, Vocational, Speech pathology,
> Physical therapy and Occupational therapy.
>
> A.2  Relief: Provide J.L. with an appropriate IEP.
> Offered: Respondent will amend J.L.'s IEP to
> incorporate the recommendations set forth in the

evaluations completed to date, including accommodations
and placement set forth therein.

A.3   Relief: Provide J.L. with extended school year
      services. Offered: Respondent will include J.L. in
      its Extended School Year Program.

B.    Relief: provide J.L. with compensatory education.
      Offered: Compensatory Occupational Therapy
      education will be provided for 100 half-hour
      sessions, even though only 80 sessions were
      recommended in the Occupational Therapy
      evaluation. I also **FIND** J.L.'s Neuropsychological
      Evaluation did not indicate that J.L. was entitled
      to compensatory education.

C.    Relief: Reimburse J.L.'s parents for expenses
      incurred for services and evaluations. Offered:
      Respondent shall pay the parents $5,587.00
      representing the full amount requested.

D.    Relief: Prohibit release of J.L.'s records without
      parental consent. Offered: Respondent will not
      release J.L.'s records without parental consent.

E.    Relief: All other remedies available under the
      law. Offered: Too general a request to provide a
      service to J.L.

Ex. D23.

Judge Schuster held that because Plaintiffs had received "by
way of offer an affirmative response to all of its demands as set
forth in the petition," the case was moot, and therefore
dismissed the Petition.   Id.   As previously noted, Plaintiffs did
not appeal Judge Schuster's decision.

B.   <u>The Parties' Arguments</u>

Defendants appear to first contend that Plaintiffs are not the "prevailing party" entitled to attorneys' fees as a matter of law because there was no judicial determination of the merits by Judge Schuster.  Plaintiffs, however, contend that Judge Schuster's decision ordered enforceable relief and, as such, was a judicially sanctioned order entitling them to fees.

Defendants next contend that Plaintiffs are prohibited from receiving attorneys' fees as a matter of law because their offers of judgment (described below), which Plaintiffs refused, exceeded the relief ultimately obtained by the parents.  Defendants rely upon 20 U.S.C. § 1415(i)(3)(D)(i-iii) discussed <u>infra</u>. Specifically, Defendants contend that they made an offer of judgment on December 6, 2013, Ex. D9, ten days prior to the hearing date [required under 20 U.S.C. § 1415(9)(3)(D)(i)(I)], and a supplemental offer of judgment on December 12, 2013, Ex. D13, both of which Plaintiffs refused.  Plaintiffs counter that first, Defendants failed to make a timely offer.  Second, Plaintiffs aver that the relief they received exceeded the offers of Judgment, namely, with respect to compensatory education and attorneys' fees.

21

Defendants' third argument is that even assuming Plaintiffs were the prevailing party and were not barred by the offers of judgment, Plaintiffs should still be estopped from receiving any attorneys' fees because of Plaintiffs' bad faith conduct.  As will be developed below, Defendants contend that "Plaintiffs subverted every effort by the Districts to provide them with relief . . . and needlessly prolonged the hearing for no gain." [Docket No. 24-1, 15 15].  Plaintiffs respond that it was Defendants, not them, who stood in the way of a resolution. According to Plaintiffs, Defendants' failure to timely turn over discovery or to plead the appropriate Answer impeded the resolution of the case.

The Court now turns to each of these arguments.

C.    Conclusions of Law

    1.    Prevailing Party Status

20 U.S.C. § 1415(i)(B) provides for an award of attorney's fees to a prevailing party stating:

> (B) Award of attorney's fees.  (i) In general, in any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney's fees as part of the costs - -
>
> (I) to a prevailing party who is the parent of a child with a disability.

22

Similarly, the Rehabilitation Act authorizes an award of
attorney's fees to a prevailing party.  29 U.S.C. § 794a:

> (b) In any action or proceeding to enforce or charge a
> violation of a provision of this title, the court,
> in its discretion, may allow the prevailing party .
> . . a reasonable attorney's fee as part of the
> costs.

In deciding whether a party is a prevailing party, there
must be a judicially sanctioned "material alteration of the legal
relationship of the parties."  Buckhannon Board and Care Home,
Inc. v. West Virginia Dept. of Health and Human Resources, 523
U.S. 598, 604 (2001).  Thus, the court must, first, determine
whether the plaintiff obtained relief on a significant claim and
whether there is a causal connection between the litigation and
defendant.  Metro Pittsburgh Crusade for Voters v. City of
Pittsburgh, 964 F.2d 244, 250 (3d Cir. 1992).  Second, the court
must determine under Buckhannon whether the change in the legal
relationship between the parties was judicially sanctioned.

Clearly, there is no dispute here that Plaintiffs achieved
the relief they sought in their litigation with Defendants - -
indeed, Defendants acceded to all their requests for relief.
Moreover, Judge Schuster put his judicial imprimatur on the
relief Plaintiffs received, i.e., the changes in the legal

relationship of the parties when he entered his Order which

provided:

> I hereby **ORDER** that the petition be and is hereby
> **DISMISSED** and respondent shall provide to the
> petitioner all the relief offered in satisfaction of
> the demands set forth in the petition.  I further **ORDER**
> an IEP meeting to be scheduled at the earliest
> opportunity for the purpose of incorporating the offers
> of services made in this matter.  I further **ORDER** those
> services to commence as soon as practicable after
> parental consent is received.
>
> This decision is final pursuant to 20 U.S.C.A. §
> 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2012) and is
> appealable by filing a complaint and bringing a civil
> action either in the Law Division of the Superior Court
> of New jersey or in a district court of the United
> States.  20 U.S.C.A. § 1415(i)(2); 34 C.F.R. § 300.516
> (2012).

Thus, by its plain terms the Order provided for judicial

enforcement.  The Order (1) contained mandatory language

("respondent shall provide to the petitioner all the relief

offers"), (2) contained a subheading "Order", (3) bore Judge

Schuster's signature, and (4) directed the parties to comply with

certain terms.  John T. ex rel. Paul T. v. Delaware County

Intermediate, 318 F.3d 545, 558 (3rd Cir. 2003).

Accordingly, the Court holds that under Buckhannon

Plaintiffs are in fact prevailing parties under IDEA and Section

504 of the Rehabilitation Act.

2.   <u>Offer of Judgment</u>

Defendants also contend that IDEA prohibits the award of attorneys' fees and costs when an offer of judgment is denied but exceeds the relief obtained by the parents.[6]   The statute reads:

> (i) In general.  Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
>
>> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>>
>> (II) the offer is not accepted within 10 days; and
>>
>> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. 1415(i)(3)(D)(i-iii).

Distilled to its essence, Defendants' argument is that because the District's made their Offer of Judgment ten days prior to the first hearing date, which Plaintiffs rejected, and because Judge Schuster found that the relief Plaintiffs requested

---

[6] Defendants do not address the Rehabilitation Act but presumably rely upon Federal Rule of Civil Procedure 68.

was less than Plaintiffs' demands, attorneys' fees are prohibited.

Plaintiffs argue several points.  First, they contend that the Offer of Judgment, as amended on December 12, 2013, was not made within ten days before the hearing date.[7]  This is true. But the reason Defendants amended (and expanded) their Offer was due to Plaintiff's dilatory conduct.  Defendants had been asking Plaintiffs for almost four months to give specific demands, yet Plaintiffs failed to do so.  Hence, fairness would seem to dictate that Plaintiffs should not profit from their own misconduct; that they should be estopped from arguing that Defendants failed to comply with the ten-day deadline.

Plaintiffs additionally argue that the Offer of Judgment was not more favorable than the relief they obtained because (1) the Offer did not include pre-offer fees and costs to which they are entitled and (2) Judge Schuster ordered more compensatory education than what Defendants had offered.  As to the latter

---

[7] Plaintiffs' argument that the hearing date was October 7, 2013, is specious.  In their Amended Complaint, they admit that no due process hearing occurred before Judge Futey.  Moreover, their own evidence submitted to this Court demonstrated that because the matter did not settle before Judge Futey at a settlement conference, the Judge assigned it to Judge Kerins for a due process hearing.  Counsel for both parties acknowledged in writing Judge Futey's Order.  See Docket No. 45-3, at 2.

argument, Plaintiffs are plainly wrong.  Defendants offered fifty hours, <u>see</u> Ex. D13, and Judge Schuster ordered 100 half-hour sessions, actually noting that Plaintiffs' own expert recommended only 80 such sessions.  Ex. D23.  As to pre-offer attorneys' fees, this Court has found that Plaintiffs were the prevailing party.  The Offer, however, did <u>not</u> offer to pay attorneys' fees and costs.  Thus, Judge Shuster's Order was not more favorable than Defendants' offer.  Accordingly, Defendants' argument on this ground fails.[8]

   3.   <u>Bad Faith</u>

   Finally, Defendants argue that when a plaintiff does not negotiate in good faith by unjustifiably rejecting a settlement offer or unreasonably protracts the case's final resolution, like Plaintiffs did here, that party should lose the right to attorneys' fees.  Defendants cite to 20 U.S.C. § 1415(F) which provides in relevant part:

   (F) Reduction in amount of attorneys' fees.  [W]henever the court finds that - -

---

[8] Had Defendants' Offer of Judgment included reasonable attorneys' fees, the Court would have been required to resolve the estoppel issue related to the timing, <u>see</u> <u>supra</u>.  It need not resolve this issue, however.

```
(i) the parent, or the parent's attorney, during the course
of the action or proceeding, unreasonably protracted the
final resolution of the controversy. . .
the court shall reduce, accordingly, the amount of the
attorneys' fees awarded under this section.[9]
```

The Court conducted a full-day hearing in this matter. During the hearing, this Court labored to get a straight answer from Mr. Epstein as to why he simply did not respond to Mr. Gorman's requests for a resolution.  Mr. Epstein's persiflage impeded the Court's task.  Nonetheless, the record is abundantly clear that Mr. Epstein unnecessarily and unreasonably protracted this litigation.  Mr. Gorman reached out to Mr. Epstein almost immediately to ascertain what relief specifically Plaintiffs were seeking with a view towards Defendants meeting those demands.

---

[9]  The federal regulation effectuating 20 U.S.C. § 1415(F), 34 C.F.R. § 300.517(c)(4)(i), provides:

> Except as provided in paragraph (c)(5) of this section,
> the court reduces, accordingly, the amount of the
> attorneys' fees awarded under section 615 of the Act,
> if the court finds that—

> (i) The parent, or the parent's attorney, during the
> course of the action or proceeding, unreasonably
> protracted the final resolution of the controversy.

Defendants focus exclusively on IDEA and not the Rehabilitation Act which does not appear to have an analogous statute.  Nonetheless, the Court, in its discretion, must determine whether fees should be awarded. The factors set forth in IDEA address the reasonableness inquiry.

Rather than extending even the courtesy of a reply to Defendants'
request to settle, Mr. Epstein demanded discovery first, telling
this Court that he wanted to "see" what his chances were at
trial.  Such conduct is troubling in several respects.  IDEA was
passed to reverse the history of neglect where disabled children
in America sat idly in regular classrooms biding time until they
were old enough to "drop out."  Schaffer v. Weast, 546 U.S. 49,
52 (2005).  It was not meant to be a windfall for lawyers.  When
Plaintiffs filed their Due Process Petition, they should have
understood, and presumably did understand the relief they were
seeking.  Why Mr. Epstein could not have communicated those
demands, at a minimum with reservation of the right to adjust
Plaintiffs demand(s) upon evaluations, is confounding.
Plaintiffs had obtained numerous private evaluations in which the
professionals made various and specific recommendations for
additional evaluations, assistive technology, and special
education services and accommodations.  See Docket No. 45-2, at
4-5.  Thus, Plaintiffs were well aware of the specific relief
they were seeking.  When this Court pressed Mr. Epstein as to why
he simply did not ask for the services his clients wanted, the
Court received no credible explanation.

Instead, Mr. Epstein contrived several excuses.  Each excuse was a disingenuous attempt to justify Plaintiffs' unreasonable delay of the litigation.  First, Mr. Epstein insinuated in his opposition papers that the Offer of Judgment extended by Mr. Gorman was not authorized because there was no record of approval by the Board of Education or any recorded minutes approving the Offer by the Board of Education.  This is a manufactured excuse, unsupported by the record.  Plaintiffs next contend, through Mr. Epstein's affirmation, that the first Offer of Judgment offered only reimbursement of $5,587 for evaluations.  Statement of Undisputed Material Facts, ¶ 60, Docket No. 45-2, at 10.  See also Plaintiffs' Brief in Support of Cross-Motion, Docket No. 45-4, at 19 ("Plaintiffs were 'substantially justified' in rejecting the December 6, 2013 offer, as it only rewarded Plaintiffs with $5,587 for past evaluations, and nothing more.")  This is just plainly false.

Mr. Epstein's excuse that Defendants insisted on using their own individuals to conduct evaluations of J.L. is also belied by the record.  As early as September 4, 2013, days within the filing of the Petition, Mr. Gorman wrote to Mr. Epstein "since it appears you are looking for independent evaluations," Ex. D2, it was in everyone's interest to resolve the case.  In the December

12, 2013, Offer, Defendants clearly stated "Clearview will
conduct Independent Evaluations."  Ex. D13.  Apparently, however,
Plaintiffs wanted to choose the professionals "of her choosing."
Ex. D15.  Why Plaintiffs never made this clear, either in their
Due Process Petition, which merely referred to "evaluations" in
earlier correspondence between counsel, is baffling.  See
Transcript before Judge Schuster, Docket No. 48-2, at page 38.
("'Additional evaluations,' so what was put on the record on
December 17th was that we would do these evaluations . . . as
independents [. because] their independence . . . was not placed
before the court on December 17th, but it would be provided.")
At the hearing Mr. Epstein argued that independent did not mean
what it said.  It is a specious argument.

   Mr. Epstein also argued as justification for the delay that
the Offers of Judgment were vague.  They were not.  If Plaintiffs
had any confusion or questions, however, Mr. Epstein should have
sought clarification.  Mr. Epstein has also argued that his
adversary's desire to settle were not sincere.  This argument is
patently frivolous.

   At the hearing and in his opposition papers, Mr. Epstein
made much of the fact that Defendants did not comply with the
mandatory resolution provisions provided for in 20 U.S.C. §

1415(f)(1)(B).  In fact, Mr. Epstein goes so far as to say that "[p]erhaps [if] Defendant had held the meeting, Plaintiffs could have resolved the case prior."  Br. Cross-Motion, Docket No. 45-4, at 28.  The Court flatly rejects such suggestion as disingenuous and belied by the record.  Not one shred of paper, e-mail or letter, evinced a cooperative view on the part of Mr. Epstein.  As this Court noted on the record, it simply seemed as if Mr. Epstein was trying "to pick a fight."[10]

Even turning to the merits of the argument, however, Plaintiffs' argument is pure pettifoggery.  Section 1415(f)(1)(B)'s "resolution session" provides that prior to the due process hearing, the district <u>shall</u> convene a meeting with the parents and the IEP team within 15 days of receiving the complaint <u>unless</u> the parents and the school district agree in writing or agree to use the mediation process.  Plaintiffs argue that even though they waived the resolution session and mediation process in writing, <u>see</u> cover page to Request for Due Process Hearing, Ex. D1, Defendants did not.  As such, the resolution was required to go forward.  The Court disagrees.  Although Defendants' waiver could have been more explicit, a fair reading

---

[10]  Relatedly, Plaintiffs' allegation before Judge Schuster that Mr. Gorman committed an RPC violation was part of that combative strategy; there was no factual basis to support it.

of Mr. Gorman's correspondence demonstrated a sufficient waiver. It is clear that, in lieu of the resolution session, Defendants were pressing mediation.  In other words, Defendants effectively waived the resolution session.  But even putting this issue aside, Mr. Epstein's representation that the case might have settled at a resolution session is simply disingenuous.

At the end of the Court's analysis, the Court is troubled by Mr. Epstein's conduct.  A reduction in fees is therefore clearly warranted given the bad faith conduct of Mr. Epstein.  What amount should be awarded remains to be decided.  The Court will need to have a better understanding of how the discovery Plaintiffs' counsel insisted upon before responding to Defendants' requests affected, if at all, Plaintiffs' demands. It seems it did not.  Additionally, Plaintiffs' apparent insistence upon a neuro-psychologist to provide training to the staff responsible for implementing the IEP appeared to be a "stumbling block" that protracted the litigation.  Defendants viewed this demand to be impermissible under IDEA.  Thus, Plaintiffs' basis for insisting upon such relief will need to also be developed.  In the end, it may be that attorneys' fees should be limited to the filing of the Petition only.  The parties will need to brief these issues and the record may need

to be further developed.  The Court will convene a conference to set a briefing schedule.

Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is denied, in part, and granted, in part, and Plaintiffs' motion for summary judgment is granted, in part.[11]

An appropriate Order will issue this date.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge


Dated: August 25, 2015

_____
[11] In light of the above, and in the interest of judicial efficiency, Plaintiffs' Motion to Amend [Docket No. 42] shall be administratively terminated pending resolution of the request for attorneys' fees.