<u>NOT FOR PUBLICATION</u>                    [Docket Nos. 42, 83, 93]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| J.L., a minor, individually and by her Parents K.L. and J.L., | |
| Plaintiffs, | Civil No. 14-2666 (RMB/JS) |
| v. | **OPINION** |
| HARRISON TOWNSHIP BOARD OF EDUCATION and CLEARVIEW BOARD OF EDUCATION, | |
| Defendants. | |

APPEARANCES:

Jamie Epstein, Esquire
107 Cherry Parke, Suite C
Cherry Hill, New Jersey 08002
     *Attorney for Plaintiffs*

Brett E.J. Gorman, Esquire
Parker McCay PA
9000 Midlantic Drive, Suite 300
Mt. Laurel, New Jersey 08054
     *Attorney for Defendants*

**BUMB,** UNITED STATES DISTRICT JUDGE:

    K.L. and J.L., the parents of J.L., a minor and a child

with special needs, and J.L. (collectively, the "Plaintiffs")

filed a due process petition against Defendants Harrison

Township Board of Education and Clearview Board of Education

(collectively, the "Defendants" or "School District") with the

New Jersey Office of Special Education.  At the time the petition was filed, J.L. attended seventh grade at the Clearview Regional School District for the 2013-14 school year and had previously attended the Harrison Township School District.  The Plaintiffs' petition for due process alleged that J.L.'s Individual Educational Programs ("IEPs") and accommodations were inappropriate.

Within days of the request for due process, counsel for the Defendants, Brett Gorman, reached out to J.L.'s lawyer, Jamie Epstein, in an attempt to resolve the matter.  Despite being immediately rebuffed by Mr. Epstein, Mr. Gorman persisted, continuing to offer to provide J.L. with the relief the Plaintiffs were seeking.  Mr. Epstein stonewalled and the Plaintiffs' attorney's fees escalated.

Unable to resolve the matter, the Defendants moved for summary judgment months later.  The Defendants argued to Administrative Law Judge ("ALJ") John Schuster, III, that the petition should be deemed moot because the Defendants were providing or were willing to provide all the relief J.L. sought in the due process petition.  Judge Schuster agreed and dismissed the petition as moot on January 28, 2014.  In the span of a mere five months, having engaged in unnecessary and, in fact, what appears to be spiteful protracted litigation, Mr.

Epstein had amassed fees in the amount of $49,450 by the time of Judge Schuster's Order.

After Plaintiffs filed a Complaint in federal court for attorney's fees, this Court held a hearing where it gave the parties an opportunity to set forth the facts of what had happened in the administrative proceedings. Thereafter, the Court found that the Plaintiffs had achieved prevailing party status under Section 1415(i)(3)(B)(i)(I) of the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act, 28 U.S.C. § 794a [Docket Nos. 69, 70]. Since the filing of the Complaint to the within motion, the Plaintiffs' amassed another $77,750 in attorney's fees.

In total, the Plaintiffs seek to have the Defendants pay $149,900 in fees, plus $11,314 in costs and expert fees. There is not one compelling fact, however, to justify the hefty award Mr. Epstein seeks. As will be discussed, Mr. Epstein presents many arguments in support of his fees – some are a product of revisionist history; some are plainly disingenuous; almost all have no merit. Suffice it to say that it has been a challenge for this Court to sift through the record, to separate the facts from fiction, the sophisms from paralogisms. Indeed, this Court has labored countless weeks reviewing this record; much of its review has been hampered by Mr. Epstein's obfuscation and tired repetition of arguments this Court and the administrative law

3

courts have rejected.  It has been no easy task.  Enough is
enough.[1]

## I.    LEGAL STANDARDS

The Defendants oppose the Plaintiffs' motion for fees,
arguing that the flagrant bad faith of Mr. Epstein compels no
award.  IDEA mandates a reduction in fees whenever the court
finds that

> the parent, or the parent's attorney, during the
> course of the action or proceeding unreasonably
> protracted the final resolution of the controversy.

20 U.S.C. § 1415(i)(3)(F)(i).  "[A]s Congress recognized when it
mandated reduced fees for a parent who 'unreasonably protracted
the final resolution,' needless litigation frustrates the
[IDEA's] objectives by fostering delay, exacerbating ill-will
among parties who should cooperate in educating the handicapped
child, and wasting the resources of all concerned."  Johnson v.
Bismarck Pub. Sch. Dist., 949 F.2d 1000, 1004 (8th Cir. 1991).

Accordingly, if the parent or the parent's attorney
unreasonably protracts the litigation, the "court shall reduce

---

[1] Mr. Epstein's arguments, contrasted with the record,
repeatedly brought to the Court's mind a riddle attributable to
Abraham Lincoln:  "How many legs does a dog have, if you call
his tail a leg?  The answer is four, because calling a tail a
leg doesn't make it a leg."  The Court has learned, through its
own painstaking and onerous analysis of Mr. Epstein's arguments
and the record, as well as the valuable assistance of
Defendants' counsel, that Mr. Epstein's representation of the
record does not make it the record.

. . . the amount of attorney's fees awarded under" IDEA.  20
U.S.C. § 1415(i)(3)(F) (emphasis added); see also Holmes v.
Millcreek Twp. Sch. Dist., 205 F.3d 583, 596 (3d Cir. 2000)
(reducing attorney's fees award to one-fourth of the original
fee demand because parents and their counsel "needlessly
protracted [the litigation], extending far beyond what was
reasonable, given the nature of the issues involved in this
case, which are not novel" and noting that "it is apparent from
the record that the School District meant to comply with the
letter and spirit of the IDEA.  Thus, this case should have been
resolved years ago.").

A court, in its discretion, may even deny attorney's fees
under IDEA altogether where the parent or the parent's attorney
unreasonably protracts the final resolution of the dispute.
J.T. ex rel. A.T. v. Medford Bd. of Educ., 118 F. App'x 605, 607
(3d Cir. 2004) (affirming district court's decision that parents
and parents' attorney, Mr. Epstein, were not entitled to any
fees because they unreasonably and unnecessarily delayed the
resolution of the controversy); see also John T. ex rel. Paul T.
v. Delaware Cty. Intermediate Unit, 318 F.3d 545, 557 (3d Cir.
2003) (noting that, under Sections 1415(i)(3)(D)-(G),
"attorney's fees may be prohibited or reduced . . . when a
parent has unjustifiably rejected a settlement offer or when a

parent has unreasonably protracted the final resolution.")
(emphasis added).

Similarly, the Rehabilitation Act provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  29 U.S.C. § 794a(b).  Attorney's fees under the Rehabilitation Act, then, are "not a matter of right but a matter of discretion."  M.G. v. E. Reg'l High Sch. Dist., 2009 WL 3489358, at *2 (D.N.J. Oct. 21, 2009) vacated and remanded on other grounds, 386 F. App'x 186 (3d Cir. 2010).  "The natural consequence of this discretion is that sometimes an award is not justified at all . . . 'may' sometimes means 'won't.'"  Id. (quoting Brown v. Stackler, 612 F.2d 1057, 1059 (7th Cir. 1980)).  "The presence of bad faith conduct on the part of a plaintiff would surely be an unusual circumstance justifying a denial of an attorney's fee."  Graziano v. Harrison, 950 F.2d 107, 114 n. 13 (3d Cir. 1991) (addressing attorney's fees in context of Fair Debt Collection Practices Act); accord In re Paoli R.R. Yard PCB Litig., 221 F.3d 449, 463 (3d Cir. 2000) (noting that, where appropriate, district courts should consider "the unclean hands, or bad faith or dilatory tactics, of the prevailing party" in determining a costs award) (citing Smith v. Southeastern Pa. Transp. Auth., 47 F.3d 97, 99 (3d Cir. 1995)).

"Once the fee petitioner submits evidence supporting the hours worked and rates claimed, the party opposing the fee application has the burden to challenge the reasonableness of the requested fee." McKenna v. City of Philadelphia, 582 F.3d 447, 459 (3d Cir. 2009) (internal quotations and alterations omitted).  The party opposing a motion for fees must "identify the portion of the fee request being challenged and state the grounds for the challenge with sufficient specificity to give the fee applicants notice that they must defend the contested portion of their fee petition." Bell v. United Princeton Property, Inc., 884 F.2d 713, 715 (3d Cir. 1989).  Moreover, although a court may not reduce a fee petition on its own initiative in the absence of specific objections from the party, id. at 718-19, the court may sua sponte "reduce requested fees with respect to matters within the judge's personal knowledge." Id. at 719; see also McKenna, 582 F.3d at 459 n. 13 ("[I]t should not be overlooked that the awarding of an attorney fee is a judicial action and, regardless of the parties' indifference to it, a court need not lend its imprimatur to an inappropriate order merely because there was no objection to its entry.").

## II.  ANALYSIS

As a preliminary matter, the Court notes that, after finding that the Plaintiffs were prevailing parties, this Court also found that "[a] reduction in fees is therefore clearly

7

warranted given the bad faith conduct of Mr. Epstein." August 25, 2015 Opinion at 33 [Docket No. 69]. Accordingly, contrary to Plaintiffs' position, the question now before the Court is not whether Mr. Epstein's fees should be reduced, but by how much.

The Defendants first contend that no fees should be awarded for any time up to Judge Schuster's Order because Mr. Epstein unreasonably protracted the resolution of this matter. Specifically, Mr. Epstein's insistence upon discovery was "unnecessary, disingenuous, and intended to protract this matter". Defendants' Brief in Opposition to Motion for Attorney's Fees ("Defs. Opp. Br.") at 4 [Docket No. 88]. The Defendants further contend that the Plaintiffs' demand for a neuropsychologist to be chosen by the Plaintiffs and to train school personnel was impermissibly designed to delay resolution of the matter. Id. at 12-18.

The Defendants next contend that from the time of Judge Schuster's Order until the filing of the present motion, Mr. Epstein committed bad faith and unnecessarily protracted the litigation before this Court. Thus, in Defendants' view, no fees should be awarded for this time either. Id. at 26.

Finally, in the event the Court awards any fees, Defendants have posed objections to certain entries which this Court will address. Id. at 24-28.

### A. __Filing of the Due Process Petition__

The Court first turns to the Defendants' position that no fees should be awarded from the time of the filing of the due process petition (billing entry [118][2]) to ALJ Kerins's Order (billing entry [328]) because Mr. Epstein's conduct unnecessarily protracted the litigation.[3]  As this Court found, two days after the filing of the due process petition, Mr. Gorman reached out to Mr. Epstein asking for a settlement offer. As Mr. Gorman put it, "Since school is starting shortly, we may be able to work something out quicker than usual."  August 29, 2013 Email at p. 4 [Docket No. 11-4].  When Mr. Epstein did reply, his retorts were nasty and uncooperative:

> "We'll see after we get Answers and discovery from BOTH respondents."  August 30, 2013 Email at p. 4 [Docket No. 11-4].

> "I'll respond if and when I receive a timely and appropriate Answer from the attorney(s) of record for the Respondents.  ps; don't address me with "Hey" Jamie again."  September 4, 2013 Email at p. 2 [Docket No. 11-4].

> "Pls read the petition."  September 5, 2013 Email at p.2 [Docket No. 11-5].

---

[2] Numbers in brackets refer to the billing entries set forth in the Plaintiffs' final bill [Docket No. 91-2].

[3] The Court does not understand the Defendants to be objecting to Mr. Epstein's fees (other than the hourly rate) incurred prior to the filing of the due process petition.

Mr. Epstein's abject failure to engage in settlement discussions or to even answer the most basic question – how can this case settle? – is simply inexcusable.

From the very beginning to December 2013, Mr. Epstein insisted on discovery – even though he was not entitled to it until five days before the hearing and even though he, to this day, has not adequately explained how discovery would have assisted in settlement discussions.  During the July 14, 2015 hearing, this Court pressed Mr. Epstein for an answer.  Mr. Epstein simply echoed the same refrain: that he wanted to see what his chances were at trial.  See, e.g., July 14, 2015 Tr. 143:6-10 [Docket No. 86] ("I asked for discovery so I could analyze the case and know what I wanted to ask for, to know what I could get at trial . . . .").  Yet, the Defendants wanted no trial; they had conceded the relief sought in the petition.  Incredulously, Mr. Epstein continues to re-argue that Judge Kerins and the Defendants (as well as this Court) misapplied the rules of discovery and should have ordered discovery earlier.[4]

---

[4] From day one, the Plaintiffs have inflexibly and repeatedly claimed that they were owed discovery from the Defendants within fifteen days of the filing of the due process petition, citing the New Jersey Uniform Administrative Procedure Rules ("UAPR" or "APA"), N.J.A.C. 1:1-10.4.  Plaintiffs rebuffed Defendants' eager and continual offers to settle the matter and instead persisted in their demand for discovery, thereby prolonging the resolution of the dispute.  Plaintiffs moved to compel discovery before ALJ Kerins.  Judge Kerins denied Plaintiffs' motion to compel discovery, explicitly stating that

the Plaintiffs were "attempting to impose the procedural guidelines of the APA over the procedural guidelines of the IDEA," which is governed by N.J.A.C. 1:6A-10.1.  Kerins Order at 4 [Docket No. 65-1, Ex. 7].

As the Defendants correctly point out and as Judge Kerins held, "[d]iscovery in special education matters is governed by the Administrative Procedure Rules for Special Education matters," not the UAPR.  Defs. Opp. Br. at 4; accord N.J.A.C. 1:6A—1.1 ("The rules in this chapter shall apply to the notice and hearing of matters arising out of the Special Education Program of the Department of Education[.]"); New Milford Bd. of Educ. v. C.R., 431 F. App'x 157, 159 (3d Cir. 2011) (applying discovery deadlines set forth in N.J.A.C. 1:6A—10.1 to special education matter).  Under the applicable Rules, "[a]ll discovery shall be completed no later than five business days before the date of the hearing."  N.J.A.C. 1:6A—10.1(a).

N.J.A.C. 1:6A-1.1 also states, however, that "[a]ny aspect of notice and hearing not covered by these special hearing rules shall be govern by [UAPR] contained in N.J.A.C. 1:1."  Seizing upon this, Plaintiffs now argue before this Court that N.J.A.C. 1:1-10.4(c), which requires that "[n]o later than 15 days from receipt of a notice requesting discovery, the receiving party shall provide the requested information," must be read into the special hearing rules under N.J.A.C. 1:6A-1.1.  Specifically, Plaintiffs contend that "unless N.J.A.C. 1:6A—10.1 (the 'five-day disclosure rule') is explicitly inconsistent with N.J.A.C. 1:1-10.4(c) then both timelines apply equally to a special education case."  Plaintiffs' Reply Brief ("Pls. Reply Br.") at 3 [Docket No. 90-1] (relying on J.G. v. Paramus Bd. of Educ., 2008 U.S. Dist. LEXIS 30030, *8 (D.N.J. Apr. 11, 2008) ("Discovery requests must be responded to within 15 days of notice and service pursuant to N.J.A.C. 1:1-10.4.  Additionally, all discovery must be completed 5 business days before the first hearing date under N.J.A.C. 1:6(a).")).  This appears to be the first time Plaintiffs have meaningfully articulated any basis in law for their obstinate demands for discovery -- over two and a half years after the issue was decided by Judge Kerins.

Whether the discovery deadlines must be read together is not presently before this Court.  More importantly, the resolution of that issue is immaterial to the task at hand.  The record is crystal clear that Plaintiffs, by refusing to engage in any good faith settlement discussions and single-mindedly commanding discovery, unreasonably protracted the resolution of the dispute.  Furthermore, to the extent Plaintiffs argue that Defendants unreasonably protracted the litigation by not timely providing discovery, the Court finds this argument to be

The Court finds that the fees related to Mr. Epstein's insistence that J.L. receive discovery before settlement discussions are patently unreasonable.  That Mr. Epstein should force a school district to turn over 2,500 pages of discovery in the face of a school district's offer to provide the due process relief requested is unreasonable.[5]  That, by his own billing records, Mr. Epstein had spent around 17 hours already reviewing the school records prior to the petition makes Mr. Epstein's conduct even more inexcusable.[6]  This Court cannot say it any better than the Defendants:  "Why Plaintiffs have continually taken such a combative and needless position at multiple times is baffling."  Defs. Opp. Br. at 11.  Even worse, the billing records do not reflect a single instance from August to November

_____

entirely devoid of merit.  Regardless of whether N.J.A.C. 1:1-10.4(c) applied in the underlying administrative proceedings, Defendants clearly and indisputably complied with N.J.A.C. 1:6A-10.1(c) by completing discovery at least five days in advance of the hearing before Judge Kerins.  But more to the point, Defendants readily sought an amicable and speedy resolution to the matter without resort to litigation.  Meanwhile, Plaintiffs unbendingly insisted upon discovery, even though, to date, they are unable to articulate why such discovery was needed.  See 12/9/2015 Tr. 5:15-22 [Docket No. 87].  The Court suspects Plaintiffs' true motivation to be fees.

[5] That Mr. Epstein then sent Judge Kerins a letter complaining that Defendants "unnecessarily burdened" Plaintiffs with these documents is even more unreasonable.  See 11/16/2013 Letter [Docket No. 47-5].

[6] See, e.g., billing entries [38], [63], [103], and [112].

12

2013 when Mr. Epstein ever consulted his experts regarding an
appropriate settlement demand.

Mr. Epstein claims that his experts "were still waiting to
review the discovery and prior written notice [and that] when
J.L. finally received the discovery in the middle of November
2013, discussions with both experts resumed immediately."  Pls.
Reply Br. at 6.  This Court finds Mr. Epstein's statement to be
disingenuous.  For example, Elizabeth Smith's Occupation Therapy
Evaluation was written after a November 18, 2013 evaluation of
J.L. and a November 22, 2013 classroom observation of J.L.  The
only records Ms. Smith reviewed were the current evaluations,
reports, and IEPs, all of which Plaintiffs had.  [Docket No. 11-
10].  Moreover, Dr. Drew A. Nagele amended his February 6, 2012
and June 14, 2013 reports on December 10, 2013, "in
consideration of additional records supplied by JL's parents
from Audiology at DuPont, a 2012-2013 IEP draft revision, the
2012-2013 IEP as amended 3-5-13, and the 2013-2014 IEP," not
records that counsel says were being withheld by Defendants.
Nagele Report [Docket No. 83-5 at 76].  These are all standard
documents that Plaintiffs certainly had at the time the petition
was filed.[7]  Mr. Epstein's insistence on discovery and failure to

_____

[7] Even if, for some reason, the Plaintiffs did not have the
IEPs, as amended - which is belied by the due process petition –
Mr. Epstein could have limited his discovery requests.  He did
not.

respond in good faith to the Defendants' requests unnecessarily delayed the resolution of this matter.[8]

Moreover, any fees associated with the Plaintiffs' Motion to Compel discovery are disallowed.  Such motion was frivolous

---

[8] The following entries are therefore disallowed:

| | | |
|---|---|---|
| **[127]** | 08/29/13 from BG: settlement offer | 0.1/$50 |
| **[131]** | 09/04/13 from BG: request for prior written notice, answer | 0.1/$50 |
| **[132]** | 09/04/13 from BG: response to discovery | 0.1/$50 |
| **[133]** | 09/04/13 from BG: settlement and mediation | 0.1/$50 |
| **[134]** | 09/04/13 to BG: getting answers and discovery | 0.1/$50 |
| **[136]** | 09/06/13 from BG: mediation availability | 0.1/$50 |
| **[137]** | 09/06/13 OSEP: mediation/resolution notice | 0.1/$50 |
| **[138]** | 09/09/13 from BG: discovery not provided | 0.1/$50 |
| **[139]** | 09/09/13 from BG: settlement and mediation | 0.1/$50 |
| **[140]** | 09/09/13 from BG: mediation availability | 0.1/$50 |
| **[147]** | 09/19/13 from BG: settlement issues, discovery | 0.1/$50 |
| **[151]** | 09/22/13 to BG: supplemental discovery | 0.1/$50 |
| **[174]** | 10/01/13 legal research | 0.3/$150 |
| **[179]** | 10/02/13 KL: DL draft report | 0.2/$100 |
| **[185]** | 10/07/13 prepare/attend OAL hearing, conference clients, travel 1.5 hours | 5.0/$2,500 |
| **[192]** | 10/09/13 to BG: draft letter to ALJ objecting to untimely hearing date | 0.3/$150 |
| **[206]** | 10/16/13 Review 10/7/13 order | 0.1/$50 |

It is ironic that Mr. Epstein billed for each time he reviewed an e-mail or letter from Mr. Gorman to settle.  Yet, he did not respond in good faith.  Any award of fees for such conduct would reward bad conduct.

Furthermore, it is evident from the record that the hearing before Judge Futey, documented in billing entry [185], was a waste of time as it was during this hearing that the Plaintiffs made the unsupportable demand to force the Defendants to hire their neuropsychologist.

and, as Judge Kerins ruled, J.L.'s position was unsupported by
the law.  Kerins Order at 4-5 [Docket No. 65-1].[9]

Similarly, Mr. Epstein's fees in opposing the Motion to
Amend the Answer will not be permitted.  This Court finds that
the Plaintiffs' argument before Judge Kerins that, as a result
of a deficient Answer, Defendants "have hindered [Plaintiffs']
ability to substantiate their claims and assess [Defendants']

---

[9] Accordingly, the following fees are disallowed:

| | | |
|---|---|---|
| **[199]** | 10/11/13 to BG: draft motion to compel discovery and prior written notice | 4.6/$2,300 |
| **[200]** | 10/11/13 review/analyze BG 10/11/13 letter To ALJ | 0.2/$100 |
| **[204]** | 10/15/13 from BG: schedule ALJ telephone conference | 0.1/$50 |
| **[205]** | 10/15/13 prepare/attend ALJ telephone conference, conference clients | 0.9/$450 |
| **[207]** | 10/18/13 Review 10/18/13 BG Motion And discuss with clients | 0.9/$450 |
| **[209]** | 10/22/13 review BG 10/22/13 letter to judge and discuss with clients | 0.3/$150 |
| **[212]** | 10/29/13 prepare/attend ALJ telephone conference, conference clients | 1.6/$800 |
| **[217]** | 11/08/13 from BG: schedule telephone conference | 0.1/$50 |
| **[218]** | 11/08/13 from BG: schedule ALJ telephone conference | 0.1/$50 |
| **[219]** | 11/08/13 from BG: ALJ telephone conference, discovery issues | 0.1/$50 |
| **[232]** | 11/13/13 from BG: schedule conference call | 0.1/$50 |
| **[237]** | 11/16/13 draft letter detailing deficient discovery responses to judge | 0.5/$250 |
| **[276]** | 12/10/13 to BG: five day disclosure plus exhibits | 0.2/$100 |

Additionally, billing entries [233] and [234] are denied as
duplicative of billing entry [232].  See infra n. 29.

defenses" to be absurd.  <u>See</u> Kerins Order at 4 (quoting Plaintiffs' 10/11/2013 Brief at 6).  Not even two months had passed since the filing of the due process petition when the Defendants filed their Motion to Amend the Answer.  Up until that time, Mr. Epstein was dealing with an adversary who continuously expressed a "willingness to resolve Petitioner's concerns" and who desired not to engage in protracted litigation.  10/11/2013 Letter [Docket No. 83-5 at p. 43].  Therefore, fees incurred in opposing the Defendants' Motion to Amend the Answer will not be allowed.[10]

Finally, as this Court has previously written, the stumbling block to the Defendants' meeting all of the Plaintiffs' demands was the Plaintiffs' insistence that the school hire a neuro-psychologist <u>chosen by the Plaintiffs</u> to train school personnel.  Mr. Gorman continuously pressed Mr. Epstein as to the authority for demanding such drastic action;

---

[10] The following fees are disallowed:

| | | |
|---|---|---|
| **[231]** | 11/12/13 to BG: review/analyze motion to amend answer and draft opposition | 1.8/$900 |
| **[235]** | 11/14/13 review BG letter to judge | 0.1/$50 |
| **[236]** | 11/15/13 prepare/attend ALJ telephone conference, conference clients | 1.9/$950 |
| **[243]** | 12/03/13 Review 12/3/13 order and discuss with clients | 0.2/$100 |

The Court will not allow billing entry [135] either, which lists "REVIEW ANSWERS".  If the Answer was as deficient as Mr. Epstein claims, the 0.3 hours billed to review the Answer is exaggerated and, therefore, denied.

he also pointed out that such relief was not sought in the due process petition.  Then, and to this day, the Plaintiffs have failed to justify such demand.

It was not until December 9, 2013 that the Plaintiffs finally responded to the Defendants' position.  Specifically, Plaintiffs demanded Defendants retain a "neuro-psychologist, of J.L.'s choice, [who] shall consult and provide training to the IEP Team up to 6 hours (including travel) per month as to all aspects of J.L.'s special needs and, additionally, shall attend all IEP and CST meetings that pertain to J.L."  12/9/2013 Letter [Docket No. 83-5 at p. 60] (emphasis added).  That Mr. Epstein did not respond with such demand – which was not contained in the petition – until December 9, 2013 is inexcusable.  Moreover, such demand, had it been properly brought as a prayer for relief in the petition could have been more swiftly addressed, as the Defendants had requested.

At the end of the matter, the Plaintiffs neither amended the petition nor justified the legal basis for insisting that J.L. retain an expert chosen by J.L. to educate and train the School District's employees.  The reason is clear – no such remedy is permissible under the law.

The Supreme Court and the Third Circuit have noted that it is "mindful that [IDEA] leaves questions of educational policy to state and local officials."  Oberti by Oberti v. Bd. of Educ.

of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1214 (3d Cir.
1993) (citing Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.,
Westchester Cty. v. Rowley, 458 U.S. 176, 207 (1982)).
Furthermore, "'once a court determines that the requirements of
the Act have been met' neither parents nor courts have a right
to compel a school district to employ a specific methodology in
educating a student." W.R. v. Union Beach Bd. of Educ., 414 F.
App'x 499, 501 (3d Cir. 2011) (quoting Rowley, 458 U.S. at 208).

This rationale applies with equal force to personnel
decisions.  IDEA and the Rehabilitation Act do not permit
parents to make decisions regarding the personnel a school
district hires and assigns to provide educational services.
"The applicable law does not permit parents to usurp the school
district's role in selecting its staff to carry out the IEP's
provisions." G.K. ex rel. C.B. v. Montgomery Cty. Intermediate
Unit, 2015 WL 4395153, at *15 (E.D. Pa. July 17, 2015) (citing
Rowley, 458 U.S. at 209).  Moreover, while "parents are members
of the IEP team and entitled to full participation in the IEP
process, they do not have the right to control it." Id.
(internal citations and quotations omitted).

The New Jersey Supreme Court has also stated that it is
"local school boards [that] are vested with the managerial
prerogative 'to deploy personnel in the manner which it
considers most likely to promote the overall goal of providing

18

all student with a thorough and efficient education.'" D.R. and S.R. on behalf of D.R. v. Ramsey Bd. of Educ., 2003 N.J. AGEN LEXIS 960, *38 (May 16, 2003) (quoting Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 157 (1978)); accord L.Z. and S.Z. on behalf of K.Z. v. Springfield Twp. Bd. of Educ., 2007 N.J. AGEN LEXIS 684, *20 (Oct. 17, 2007) ("the [School] District has the discretion and prerogative to select personnel."). "Ultimately, staffing decisions are the province of local school officials," not the parents, or the parents' counsel, and cannot be used to strong-arm school districts in settlement negotiations. See Ramsey Bd., 2003 N.J. AGEN LEXIS 960, *38.

In the Motion for Attorney's Fees, however, the Plaintiffs attempt to recast their demand, claiming that it was for "a neuro-psychologist to monitor J.L.'s IEP compliance and train staff members." Plaintiffs' Brief in Support of Motion for Attorney's Fees at 4 [Docket No. 83-4]. Mr. Epstein spins pages of legal argument regarding the propriety of a monitor. He slyly ignores the fact that all along he had demanded that the Defendants hire a neuropsychologist of the Plaintiffs' choice – presumably Dr. Nagele. First, in his December 9, 2013 letter, Mr. Epstein demands that the neuro-psychologist be "of JL's choice." 12/9/2013 Letter [Docket No. 83-5 at p. 60]. After the Defendants received Dr. Nagele's December 10, 2013 report

19

recommending a consulting professional with experience in central nervous system disorders to observe implementation of the IEP, the Defendants agreed to appoint Bryan Hendricks, who had already been working with J.L. and who was soon to obtain his Ph.D. with a specialty in neuropsychology.  12/12/2013 Letter [Docket No. 83-5 at p. 63-64].  Mr. Epstein fired off another letter on December 16, 2013, demanding, yet again, "[a] neuro-psychologist, of JL's choice."  12/16/2013 Letter [Docket No. 83-5 at p. 73] (emphasis added).

Moreover, as discussed, after Judge Kerins's decision, on December 6, 2013, the Defendants made what was the first formal Offer of Judgment.  12/6/2013 Offer of Judgment [Docket No. 83-5 at p. 58-59].  On December 9, 2013, Mr. Epstein finally responded in writing with specific demands.  12/9/2013 Letter [Docket No. 83-5 at p. 60].  In response, on December 12, 2013, the Defendants amended their Offer of Judgment to address Plaintiffs' written demands.  12/12/2013 Amended Offer of Judgment [Docket No. 83-5 at p. 63-64].  What is most remarkable is that even after the Defendants offered to meet the Plaintiffs' demands, Mr. Epstein not only failed to timely respond but racked up over $10,350 in fees before responding, and an additional $1,450 in fees preparing his overdue response. According to the Plaintiffs' own billing records, the chronology is as follows: on December 12, 2013, the Plaintiffs received the

Defendants' December 12, 2013 responsive offer and Mr. Epstein
discussed it with his clients.  See billing entry [281].[11]  For
two days, however, December 14, 2013 and December 15, 2013, Mr.
Epstein engaged in trial preparation, amassing $5,300 in fees
for "trial preparation."  See billing entries [282], [287].  It
was not until December 16, 2013 that Mr. Epstein responded to
the offer.  See billing entry [288].  Yet, on the same day, in
addition to billing 2.9 hours (and charging $1,450) for drafting
a mere two-page letter, see billing entry [288], Mr. Epstein
also billed 8.7 hours (and charged $4,350) in "trial
preparation," see billing entries [289], [290], for a total of
11.6 hours billed on that day.

The amount Mr. Epstein billed for trial preparation,
without first making a reasonable and good faith effort to at
least respond to the Defendants' counteroffer, is unacceptable.
Incredibly, even when Mr. Epstein did finally respond, on the
day before trial, he accused Mr. Gorman of "negotiating in bad
faith."  12/16/2013 Letter [Docket No. 83-5 at p. 73].  It is
hard for this Court to understand such insolence and

---

[11] Any contention by the Plaintiffs that the December 12,
2013 letter was not received that day (as the Court notes Mr.
Epstein's language in his December 16, 2013 letter "By mailed
letter dated 12/12/13, rather than the customary email . . .
."), is belied by Mr. Epstein's own billing records.  Billing
entry [281] reflects that on December 12, 2013, he "review[ed]/
Analyze[d] BG 12/12/13 Settlement Counter Offer."

belligerence.  Because the Court finds the expenditure of fees
for trial preparation could and should have been avoided, it
will not allow such fees.[12]

On December 17, 2013, the parties appeared before Judge
Kerins.  At that hearing, Mr. Gorman expressed that he wished to
advise the Court as to the School District's position.  Mr.
Epstein objected to any discussion of settlement on the record –
which apparently prompted Mr. Gorman to advise the Court that
the petition was moot because the School Districts were offering
all the relief sought in the petition.  The following colloquy
occurred:

> MR. EPSTEIN: I have a standing objection to counsel
> discussing settlement offers with the court and I just

---

[12] Consequently, the following fees are disallowed:

| | | |
|---|---|---|
| **[267]** | 12/09/13 KL: trial preparation | 0.1/$50 |
| **[273]** | 12/09/13 KL: pretrial disclosures | 0.1/$50 |
| **[277]** | 12/10/13 to BG: review/analyze JL's<br>records and select trial exhibits<br>(470 pages) | 8.7/$4,350 |
| **[279]** | 12/10/13 to BG: review school's letter to<br>ALJ to cancel trial and draft opposition | 0.4/$200 |
| **[282]** | 12/14/13 trial preparation | 4.1/$2,050 |
| **[284]** | 12/14/13 Draft objection to BG 12/12/13<br>disclosure of offer Letter to Judge | 0.3/$150 |
| **[287]** | 12/15/13 trial preparation | 6.5/$3,250 |
| **[288]** | 12/16/13 to BG: review schools [sic]<br>12/12/13 offer and draft response | 2.9/$1,450 |
| **[289]** | 12/16/13 trial preparation, conference<br>client | 8.3/$4,150 |
| **[290]** | 12/16/13 KL: trial preparation – Witness<br>questions | 0.4/$200 |

Additionally, billing entry [280] will be denied as it is
subsumed within billing entry [281].

22

want to confirm that I have an ongoing objection and
he can continue his argument.

THE COURT: I will -- I note for the record that it has
been Mr. Epstein's position throughout the pendency of
this case and we have had several telephone
conferences regarding discovery issues that the – that
I not take an active involvement in any settlement
discussions in this matter.  Am I correct, Mr.
Epstein?

MR. EPSTEIN: You're absolutely correct.

THE COURT: Yes.  And I do note that Mr. Epstein's
correspondence to me of the other day -- I  believe
yesterday I received it, raised the issue again since
Mr. Gorman had submitted correspondence to me, which
included settlement letters which had -- settlement
discussion letters that had passed back and forth
between the parties, and I -- I note that the issue
has been raised.

However, I am going to allow Mr. Gorman to place on
the record essentially what -- if it's argument
regarding settlement discussions, then we're at an
end.  If Mr. Gorman is placing on the record the
district's position regarding what it has conceded in
this matter and is willing to provide, based on that
representation by the district, I will allow Mr.
Gorman to proceed, also noting Mr. Epstein's continued
objection regarding anything being provided to the
court regarding settlement discussions, all right?

MR. GORMAN: And to be clear, Judge, that is correct.
What I'm stating right now is not a settlement offer,
this is the district's position is that these -- the
relief that petitioners are seeking has already been
provided by the district and thus the petition -- what
they're seeking in the petition is now moot, I'm
requesting the court to dismiss this matter a[s] moot,
that's what I'm presenting to the court.  I'm putting
it on the record so that it's clear and there is a
record as to what the district has -- is going to
provide in this matter.

MR. EPSTEIN: And I object if that's the purpose he's putting them on because the court's made it clear that the court's not dismissing anything without a formal motion.

THE COURT: Well, yes, as we discussed in my chambers, I am going to require a formal motion that Mr. Epstein may respond to.  However, I will allow Mr. Gorman to continue as this is the -- this was scheduled to be the first day of the hearing.  The district has the burden.  If the district is conceding elements of the case, or all of the elements of the case, then that is appropriate that it place it on the record, but that is what the district is doing.

Now, Mr. Epstein, you may of course, on the record today, disagree with anything that the district is proposing as ending this matter, that is why I -- I'm going to require that a formal motion on the issue of mootness be provided.

MR. GORMAN: Understood, Your Honor.

THE COURT: All right?  Thank you.  You may continue, Mr. Gorman.

MR. GORMAN: Thank you.  Now that takes care of 2C, the second part of 2D which is prohibit Harrison Township School District from allowing J.'s education or health records be disclosed to third parties without J.'s parents' consent, absolutely the district will agree to that, and that is all the specific relief that's set forth in the petition.  The district has made separate, you know, separate representations, but as that does not obtain to the relief set forth in the petition, unless there's a mutual agreement from the parties that the district will not add those other terms -- other terms onto the record.  But these are the terms relating to the petition that the district has provided and the district now contends, makes the petition moot and the relief sought -- as the district has exceeded and is already willing to provide everything to petitioner.  Now the only outstanding issue here would be attorneys' fees, and on the record the district has sought to obtain an offer and has not received one to date.  Otherwise it would have considered that.

24

12/17/2013 Hearing Tr. 9:12-12:18 [Docket No. 48-1] (emphasis added).

Mr. Epstein responded that there was no settlement, that his clients were entitled to an enforceable order, and that if Judge Kerins was not going to disqualify herself, due to having heard the School District's terms, "then this matter should proceed with the due process hearing immediately." Id. at 15:1-8 (emphasis added). The hearing continued:

> [THE COURT:] What I am -- you may sit down, sir.  What I am presented here today is what appears to be an issue of mootness --
>
> MR. GORMAN: Yes.
>
> THE COURT: -- with concessions by the district. They're saying they have conceded everything.  Mr. Epstein and his clients disagree, all right?
>
> I am not going to decide the issue of mootness today, nor am I going to decide the issue of my recusal today.  This issue I first became aware of it yesterday.  I need to review that issue and make a determination.
>
> However, no matter what my determination is on recusal, and I note that it is a serious issue that I need to take a look at as I have been provided with discussions re settlement between the parties when one of the parties has specifically requested during the course of the hearing that I not become involved in detailed settlement negotiations.
>
> I do wish to place on the record that in this case, as I do in every case before me I do bring up the issue of settlement with parties, I do counsel them to continue to attempt to settle cases.  In this case I did not become involved as per Mr. Epstein's request in detailed settlement negotiations between the parties.  However, it appears I have become involved in detailed settlement negotiations between the

parties as the district's counsel provided me with information regarding that and the offer of settlement under Federal law which was provided to the parties.

So, with that caveat, given the short amount of time I have had to review the issue of recusal I am not going to rule on that today.

However, what I am going to do is I'm going to direct the district should it determine that it wishes to pursue in a formal way the issue of mootness that it immediately file, and by "immediately" I mean preferably by the end of the week a formal motion because, you know, we need to get this case moving one way or another; either it settles or we move on.

Id. at 18:22-20:12 (emphasis added).

What Judge Kerins recognized is that the matter appeared moot except for attorney's fees. That could have been the end of this litigation except for fees -- J.L. would have gotten the relief Plaintiffs wanted. But, unfortunately, it was not. Upon Mr. Epstein's perplexing objection, Judge Kerins subsequently recused herself on December 20, 2013, and the matter was set before Judge Schuster on the Defendants' motion for summary decision.

Clearly, Mr. Epstein was well aware before and on December 17, 2013 that the Defendants were willing to provide all the relief sought by the Plaintiffs in the petition. Indeed, he admits so in a letter dated December 20, 2013 addressed to Judge Kerins. 12/20/2013 Letter [Docket No. 41-6] ("[I]t now appears Respondents assert the Petition should be dismissed . . .

26

because they now agree to all the remedies in the Petition.").[13]
Yet, Mr. Epstein pressed hard for a due process hearing.  Why?
Fees, of course.  He sought Judge Kerins's recusal – even after
she informed the parties that it appeared the district had
"conceded everything."  12/17/2013 Hearing Tr. 19:2-3.  Because
of Mr. Epstein's hindrance, the hearing before Judge Kerins was
pointless; there was absolutely no reason why a trial had to be
held.  The Court will not countenance such troubling conduct.[14]

     It was bad enough that Mr. Epstein pressed forward for a
due process hearing on December 17, 2013 before Judge Kerins,
when he clearly knew the Defendants would give J.L. what was
sought in the petition.  It is even more egregious that Mr.
Epstein boorishly opposed any adjournment of the due process
hearing even after the Defendants had filed their motion for
summary disposition on December 28, 2013.  Incredibly, the very
day after the parties argued the Defendants' motion for summary

---

     [13] Mr. Epstein's letter to Judge Kerins was simply uncalled
for.  Upset that Mr. Gorman had disclosed to Judge Kerins the
fact that the Defendants were conceding the due process
petition, Mr. Epstein told Judge Kerins that she would "need to
review [the settlement] as part of a sanction motion and/or
referral to Attorney Ethics."  12/20/2013 Letter [Docket No. 41-
6].  Nobody likes a bully.  Mr. Gorman is to be commended for
his professionalism and restraint.  Moreover, apparently Mr.
Epstein does not reserve his bullying just for his adversaries,
but also extends his bullying to federal judges.  See infra
n. 33.

     [14] Therefore, billing entry [291] will be disallowed in its
entirety.

decision before Judge Schuster on January 14, 2014, Mr. Epstein wrote a letter apparently complaining, not to Judge Schuster, but to the Chief ALJ that the Defendants (and Judge Schuster) were delaying the January 28, 2014 trial date.  1/23/2014 Letter [Docket No. 65-2, Ex. 22].  Of course, there were judicially sound reasons to delay the trial.  A favorable decision by Judge Schuster would have and, in fact, ultimately did obviate the need for a trial.  Why Mr. Epstein fought the adjournment and went so far as to go above Judge Schuster is not only troubling, but violative of the most fundamental concepts of a lawyer's professionalism.  That a lawyer should want or desire to expend an extraordinary amount of resources in preparing for a clearly unnecessary trial is inimical to the Rules of Professional Conduct by which a lawyer should conduct himself.

Knowing that the School District wanted to give the Plaintiffs all the relief sought, Mr. Epstein went on to bill more than $10,000 before receiving Judge Schuster's Opinion, which held that the due process petition was moot because the Defendants had conceded all the relief Plaintiffs sought, incidentally, a fact long known to Mr. Epstein.  Schuster Opinion [Docket No. 65-2, Ex. 23].  The fees from December 19, 2013 to January 28, 2014 are all denied because they were

completely unnecessary and both could and should have been
avoided.[15]

---

[15] Those fees are as follows:

| | | |
|---|---|---|
| **[293]** | 12/19/13 to BG: draft fee demand letter | 0.2/$100 |
| **[294]** | 12/20/13 to BG: withdraw the demand letter, forward to letters [sic] to ALJ | 0.1/$50 |
| **[295]** | 12/20/13 to BG: review 12/12/13 dismissal ltr and draft/amend response | 0.8/$400 |
| **[296]** | 12/20/13 review/analyze 12/20/13 order and discuss with client | 0.3/$150 |
| **[297]** | 12/20/13 review/analyze BG MTD and discuss with clients | 0.6/$300 |
| **[298]** | 12/23/13 from BG: objection to expert fees in demand | 0.1/$50 |
| **[299]** | 12/23/13 to BG: respond to BG opposition to experts fees | 0.1/$50 |
| **[302]** | 12/23/13 to BG: draft letter to chief ALJ: schools improper disclosure to ALJ | 0.2./$150 |
| **[303]** | 12/23/13 review/analyze BG 12/23/13 letter to judge and discuss with clients | 0.3/$150 |
| **[304]** | 01/02/14 from BG: request for adjournment of hearing | 0.1/$50 |
| **[305]** | 01/02/14 from BG: request for adjournment of hearing | 0.1/$50 |
| **[306]** | 01/02/14 from BG: request for adjournment of hearing, conflict | 0.1/$50 |
| **[307]** | 01/02/14 from BG: request for adjournment, conflict | 0.1/$50 |
| **[308]** | 01/02/14 from BG: request for adjournment of 1/14 hearing | 0.1/$50 |
| **[310]** | 01/02/14 to BG: draft letter to chief ALJ objecting to schools trial postponement request | 0.3/$150 |
| **[311]** | 01/02/14 review notice of 1/14/14 hearing | 0.1/$50 |
| **[312]** | 01/03/14 review BG letter regarding hearing date | 0.1/$50 |
| **[314]** | 01/06/14 to BG: review/analyze schools motion to dismiss and draft opposition | 9.1/$4,550 |
| **[315]** | 01/08/14 from BG: request to adjourn 1/28 hearing | 0.1/$50 |
| **[316]** | 01/08/14 to BG: draft 2d ltr to chief ALJ objecting to schools trial postponement request | 0.4/$200 |

The Plaintiffs never appealed that decision.  Thus, it was as Mr. Gorman had represented on December 17, 2013 to Judge Kerins.  $13,700 in attorney's fees later, Judge Schuster dismissed the petition as moot.  All of these fees could have been avoided had Mr. Epstein engaged Mr. Gorman in a bona fide settlement conversation.  One need only read the transcripts and the correspondence to reach this conclusion.

The question remaining is whether any of the fees from the filing of the due process petition to Judge Schuster's Order, not already disallowed, should be permitted.  The unequivocal answer is no.  Courts have held that when a request for attorney's fees is so exorbitant or exaggerated so as to shock the conscience of the court, fees may be outright denied.  See, e.g., Fair Housing Council of Greater Washington, 999 F.2d 92, 96 (4th Cir. 1993); Brown, 612 F.2d at 1059.

---

[317] 01/08/14 KL: preparation for 1/14/14 hearing                                              0.1/$50
[318] 01/11/14 review/Analyze BG 1/10/14 motion for summary decision                            0.8/$400
[319] 01/14/14 prepare/attend OAL hearing, conference clients, travel 1.5 hours                 5.5/$2,750
[320] 01/15/14 to BG: draft letters to ALJ Reba and Futey objecting to postponement            0.4/$200
[321] 01/23/14 Review 1/23/14 letter from judge   0.1/$50
[322] 01/27/14 from BG: confirming hearing is adjourned                                          0.1/$50
[323] 01/28/14 review order and decision and discuss with clients                               0.4/$200

In Brown, for example, the Seventh Circuit affirmed the district court's decision to deny plaintiffs' request for attorney's fees in its entirety because the claim was "outrageously excessive." 612 F.2d at 1059. The Seventh Circuit held that "[s]uch denial is an entirely appropriate, and hopefully effective, means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated, and conscientiously measured claims when seeking statutory counsel fees." Id.

Similarly, in Lewis v. Kendrick, the First Circuit reversed an award of fees, finding that "turn[ing] a single wrongful arrest into a half year's work, and seek payment therefor, with costs, amounting to 140 times the worth of the injury, is, to use a benign word, inexcusable." 944 F.2d 949, 956 (1st Cir. 1991). The court refused to "tolerate, even by a partial award, such an imposition by counsel on the defendants, and on the court" and, accordingly, awarded no fees whatsoever. Id.

Attorneys "are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court. . . . Lawyers therefore must exercise care, judgment, and ethical sensitivity in the delicate task of billing time and excluding hours that are unnecessary." Hall v. Borough of Roselle, 747 F.2d 838, 842 (3d Cir. 1984). Accordingly, when they fail to do so, fees may be denied in

their entirety.  See id. (citing Brown v. Stackler, 460 F. Supp. 446 (N.D. Ill. 1978), aff'd, 612 F.2d 1057 (7th Cir. 1980)); see also M.G. v. E. Reg'l High Sch. Dist., 386 F. App'x 186, 189 (3d Cir. 2010) ("If, after following the proper procedures, the Court remains convinced that Epstein's hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all."); Deptford Twp. Sch. Dist. v. H.B. ex rel. E.B., 279 F. App'x 122, 126 n. 2 (3d Cir. 2008) (reversing district court's finding that plaintiffs were "prevailing parties" and award of attorney's fees, noting that "even if the District Court's finding . . . rendered Appellees the 'prevailing party,' an award of attorneys' fees would not be proper on the particular facts of this case.  As the District Court noted, the relief achieved here was 'scant and unimpressive,' . . . .  Moreover, Appellees' attorney [Mr. Epstein]--either through gross carelessness or worse--initially sought fees that included 60 hours billed in a single day.  On this record, we find that fees should not have been awarded.") (internal citations and quotations omitted); L.J. ex rel. V.J. v. Audubon Bd. of Educ., 2009 WL 995458, at *13 (D.N.J. Apr. 13, 2009), aff'd, 373 F. App'x 294 (3d Cir. 2010) (denying outright Mr. Epstein's request for "an astounding $10,480 in attorney's fees" for 26.2 hours

billed for logging billing entries, noting that the request was "unreasonable on its face, and borderline conscience-shocking").

While these courts have generally addressed the exaggeration of the amount of fees billed, as opposed to the egregious conduct of the attorney, the Court finds the same rationale applicable here.  Here it is not only the exorbitant amount of fees billed that shocks the conscience, but also the Plaintiffs' strategy of unnecessarily protracting the litigation in an apparent effort to continue accumulating fees.

The Defendants urge this Court to deny the Plaintiffs' attorney's fees request because it was the Defendants, not the Plaintiffs, who were responsible for obtaining the relief for J.L.  The Court could not agree more.  What is truly remarkable about this case is that it was the Defendants' counsel – not Plaintiffs' counsel – who persisted in getting J.L. the relief J.L.'s parents sought when they filed the due process petition. Mr. Epstein's pattern of delay and obfuscation only served to prolong the proceedings and prevent J.L. from getting the relief ordered by Judge Schuster sooner.  Indeed, more than one half of the school year passed without resolution.  Not only did Mr. Epstein refuse to engage in any meaningful discussions, he actively fought against settlement and even opposed the Defendants' motion for summary decision which ultimately provided the Plaintiffs the relief they sought.  It is indeed a

great irony that Plaintiffs' ultimate relief was obtained through the application of Defendants' counsel, not Plaintiffs' counsel.  Why then should this Court grant fees for the legal work done by Mr. Epstein after the due process petition was filed, when, in reality, Mr. Epstein labored against the very relief the Defendants were offering J.L.?  It should not.  In short, this Court holds that an attorney should not be permitted to recover fees for a result eventually obtained by his client, but which that attorney had, for months, actively sought to restrain.  An award of such fees would shock the conscience of even the most forgiving jurist.

Sadly, the Court is not convinced that Mr. Epstein even appreciates how unacceptable his conduct was and how the Defendants actually sought to provide J.L. the relief Mr. Epstein initially requested.  In Mr. Epstein's Affidavit in Support of the Plaintiffs' Reply Brief, he makes the incredulous statement that "[c]ontrary to Defendants' representations there was no finding that Plaintiffs' counsel acted in bad faith and unnecessarily protracted the litigation in this Court." Affidavit ¶ 18 [Docket No. 90-2].  If this Court's Opinions - which Mr. Epstein purports to have read and, in fact, has billed several hours for reading - have little effect on Mr. Epstein's recognizing how lawyers should not behave, then, perhaps an entire reduction in fees will.

Accordingly, the Court will disallow all remaining fees for the period from the filing of the due process petition on August 27, 2013 through the filing of the present Complaint in federal court on April 27, 2014.[16]

### B. District Court Complaint

The Court next turns to the Defendants' positon that no fees should be awarded from the time of the filing of the Complaint in federal court to the present motion because of Mr. Epstein's bad faith and litigation misconduct.  Although this Court is tempted to deny these fees outright given Mr. Epstein's misconduct, it must avoid such temptation and review the record. Certainly, the Plaintiffs were justified in opposing the Defendants' Motion for Summary Judgment.  Indeed, the Court found that Plaintiffs achieved prevailing party status on August 25, 2015.  Opinion at 24 [Docket No. 69].[17]

---

[16] Because the Court denies these fees, it need not address the Defendants' objections to Mr. Epstein's consultation with other attorneys, as documented in billing entries [152] and [173].

[17] Plaintiffs contend that "whether or not this Court disposed of the argument as to whether Plaintiff was prevailing party was not clear, as there was no explicit determination within this Court's August **cite** hearing [sic] regarding such. It was not until December 9, 2015, that this Court determined that Plaintiffs were the prevailing party."  Pls. Reply Br. at 10 (bold in original).  This is plainly untrue, if not utter nonsense.  First, there was no August 2015 hearing – the Court held the hearing on this issue on July 14, 2015.  Second, while the Plaintiffs are correct that the Court reserved its decision at the hearing, the issue was unambiguously and explicitly

Yet, there is no question that in filing the Complaint and litigating the attorney's fees issue before this Court, Mr. Epstein engaged in bad faith.  He continued, and continues, to make arguments that were rejected by the ALJs.  He continues to distort the record.  The Court will address Mr. Epstein's misconduct in three stages: the filing of the Complaint; the Motion to Dismiss/for Summary Judgment; and the Motion for Attorney's Fees.

The filing of the Complaint was reasonable; the fees incurred, however, were not.  Three hours will be disallowed.[18]

---

resolved when the Court held that the Plaintiffs were prevailing parties under IDEA and Section 504 of the Rehabilitation Act in its August 25, 2015 Opinion [Docket No. 69 at 24].  Why Mr. Epstein's confusion as to this point persists is unclear to the Court, especially in light of the fact that, according to billing entry [441], Mr. Epstein spent over 1.9 hours reviewing and analyzing the Court's Opinion and Order.

[18] The Plaintiffs seek 5.5 hours for drafting the Complaint:

| | | |
|---|---|---|
| **[329]** | 04/27/14 record review/draft complaint [1], conference clients | 3.0/$1,500 |
| **[336]** | 05/14/14 record review/draft amended complaint, CCS [6] | 2.5/$1,250 |

It is a fairly pro forma complaint, however, that an experienced attorney can easily draft in 2.5 hours.  3.0 hours are therefore disallowed.

Mr. Epstein also billed 0.5 hours for handling a clerical overcharge error:

| | | |
|---|---|---|
| **[331]** | 05/03/14 draft letter to clerk overcharge [3] | 0.2/$100 |
| **[333]** | 05/13/14 draft letter to clerk: overcharge [4] | 0.2/$100 |

---

**[334]** 05/13/14 review order to refund fees [5]    0.1/$50

Of these, 0.4 hours will also be disallowed.  There is no reason that drafting quick letters regarding an overcharge and reviewing the refund order should have taken a full 0.5 hours.

In addition, when pleadings are filed, the Clerk of the Court automatically generates a notice as to the return date. Sometimes this Court also generates a quick notice.  Incredibly, Mr. Epstein billed a cumulative 2.3 hours, or $1,150, merely reviewing these notices:

|  |  |  |
|---|---|---|
| **[340]** | 06/09/14 review clerks notice motion deadlines | 0.1/$50 |
| **[341]** | 06/09/14 review/analyze order dismissing MTD [12] | 0.2/$100 |
| **[345]** | 06/13/14 review/analyze order [16] | 0.1/$50 |
| **[352]** | 06/19/14 review text order [19] | 0.1/$50 |
| **[358]** | 06/23/14 review clerks MTD deadline | 0.1/$50 |
| **[359]** | 06/23/14 review text order scheduling conference [25] | 0.1/$50 |
| **[360]** | 06/23/14 review text order rescheduling conference [26] | 0.1/$50 |
| **[367]** | 07/01/14 review clerks notice | 0.1/$50 |
| **[369]** | 07/01/14 review clerks MTD deadline | 0.1/$50 |
| **[371]** | 07/01/14 review clerks notice of motion deadline | 0.1/$50 |
| **[377]** | 07/24/14 review order adjourning motion [32] | 0.1/$50 |
| **[378]** | 07/24/14 review clerks notice of motion deadline | 0.1/$50 |
| **[403]** | 02/23/15 review clerks notice of motion deadline | 0.1/$50 |
| **[405]** | 02/25/15 review clerks notice of motion deadline | 0.1/$50 |
| **[413]** | 03/10/15 review order [51] | 0.1/$50 |
| **[414]** | 03/10/15 review clerks notice of motion deadline | 0.1/$50 |
| **[426]** | 06/24/15 review order for hearing [61] | 0.2/$100 |
| **[435]** | 07/15/15 review minute entry [64] | 0.1/$50 |
| **[450]** | 09/10/15 review order rescheduling conference | 0.1/$50 |
| **[455]** | 11/25/15 review clerks motion deadline notice | 0.1/$50 |
| **[458]** | 12/01/15 review order [80] | 0.1/$50 |

Moreover, in opposing the Motion to Dismiss, Mr. Epstein billed
a whopping 23.3 hours in connection with filing an opposition
brief that consisted of a mere six pages (relative to the claim)
and had little value.  The Court will allow two hours.[19]

---

These hours will not be allowed.  All could have been read
together in minutes.  Only 0.1 hour will be allowed.  As to
billing entry [426], the Court finds it utterly bewildering that
counsel can bill 0.2 hours for reviewing an order setting oral
argument, especially when counsel then bills another 0.2 hours
for reviewing the same order again with defense counsel in
billing entry [427].

Additionally, the hours billed for the unopposed protective
order are excessive and will not be allowed:

| | | |
|---|---|---|
| **[362]** | 06/30/14 respond to BG: review proposed jdp, draft amended proposed jdp | 0.8/$400 |
| **[363]** | 07/01/14 from BG: approve protective order | 0.1/$50 |
| **[365]** | 07/01/14 to BG: draft proposed protective order | 0.7/$350 |
| **[370]** | 07/01/14 draft motion for protective order [29] | 3.5/$1,750 |
| **[372]** | 07/03/14 review discovery confidential order [30] | 0.1/$50 |
| **[374]** | 07/19/14 to BG: execute protective order agreement | 0.1/$50 |
| **[381]** | 08/10/14 to BG: follow-up protective order agreement signatures | 0.1/$50 |
| **[382]** | 08/11/14 to BG: follow-up again on agreement signatures | 0.1/$50 |

[19] The related billing entries are as follows:

| | | |
|---|---|---|
| **[339]** | 06/06/14 review/analyze MTD [11], conference clients (2.1 hours for LAD n/c) | 4.1/$2,050 |
| **[354]** | 06/20/14 review/analyze refiled MTD [21, 22] (.5 hours for NJ LAD part not charged) | 1.1/$550 |
| **[356]** | 06/22/14 review/analyze amended MTD [24] (.2 hours for NJ LAD part not charged) | 0.8/$400 |
| **[376]** | 07/21/14 draft 7.1 letter [31] | 0.2/$100 |

On December 19, 2014, this Court converted Defendants'
Motion to Dismiss to a summary judgment motion.  12/19/2014
Opinion [Docket No. 38].  It was a relatively short and
straightforward Opinion.  It should not have taken 2.5 hours to
review and "analyze" it.  See billing entries [390] and [391].
One hour will be permitted.

Plaintiffs billed over twenty hours for legal research and
drafting of the Plaintiffs' Motion for Summary Judgment.  The
Court finds these fees excessive.  For the most part, the briefs
regurgitated the same worn arguments Plaintiffs had argued
before.  Because Plaintiffs did prevail, however, reasonable
fees will be allowed.  Four hours is more than reasonable.[20]

---

| [379] | 08/01/14 legal research opposition to MTD | |
| | (2.9 hours for NJ LAD part not charged) | 6.1/$3,050 |
| [380] | 08/04/14 draft opposition to MTD [33] | |
| | (3.1 hours for NJ LAD part not charged) | 7.7/$3,850 |
| [383] | 08/11/14 review/analyze reply brief [34] | |
| | (1.1 hours for NJ LAD part not charged) | 3.1/$1,550 |
| [384] | 08/11/14 draft letter: reply brief | |
| | improperly filed [35] | 0.2/$100 |

[20] The following fees were unreasonable:

| [395] | 02/17/15 review/analyze BG amended | |
| | MSJ [41] | 1.3/$650 |
| [398] | 2/18/15 legal research/first draft MSJ | 7.3/$3,650 |
| [400] | 2/19/15 legal research/second draft MSJ | 7.5/$3,750 |
| [401] | 02/20/15 draft letter: deadlines [44] | 0.2/$100 |
| [402] | 2/20/15 final draft MSJ | 6.6/$3,350 |
| [404] | 02/24/15 review BG's 7.1 letter [46] | 0.1/$50 |
| [406] | 3/2/15 review/analyze six volume | |
| | 500 + pages administrative record | 6.8/$3,400 |
| [407] | 03/02/15 amend MSJ; administrative | |
| | record [47] | 0.2/$100 |

On July 14, 2015, the Court conducted a hearing on the parties' motions for summary judgment.  Plaintiffs billed 15.8 hours for the hearing and for preparation on the day before the hearing.  See billing entries [433], [434].  In light of the fact that this Court found much of what counsel was arguing to be persiflage, pettifoggery, or pure obfuscation, in addition to the inferior quality of the briefing – which reargued points already rejected below – the total amount of fees requested cannot stand.  The Court will disallow such fees.  Moreover, spending 7.7 hours for the "preparation" for the summary judgment hearing and "consult with francis j. Hartman, esquire" is excessive.  See billing entry [433].  Moreover, it is not clear how long the consultation with Mr. Hartman lasted and why

| | | |
|---|---|---|
| **[408]** | 03/02/15 amend MSJ; transcripts [48] | 0.1/$50 |
| **[410]** | 03/09/15 from BG: agreed to extend motion return date | 0.1/$50 |
| **[411]** | 03/09/15 to BG: extend deadline on [42] | 0.1/$50 |
| **[412]** | 03/09/15 draft letter extend deadlines [50] | 0.2/$100 |
| **[415]** | 04/06/15 review/analyze/research MSJ opposition [52] | 8.1/$4,050 |
| **[418]** | 04/09/15 first draft/research MSJ reply brief | 7.2/$3,600 |
| **[419]** | 04/13/15 final draft/research MTA reply brief [54] (7.1 hours for NJLAD not charged) | 0.0/$0 |
| **[420]** | 04/13/15 final draft/research MSJ reply brief [55] | 6.1/$3,050 |
| **[421]** | 04/14/15 draft MSJ reply amendment [56] | 0.2/$100 |
| **[422]** | 04/21/15 draft amendment to MSJ reply [57] | 1.0/$500 |
| **[424]** | 04/21/15 draft amendment to MSJ [59] | 1.0/$500 |

such consultation was needed when the issue before the Court was simply whether Plaintiffs were the prevailing parties.  The Court will disallow these hours.[21]

Moreover, Plaintiffs filed an unauthorized submission, aptly characterized as a sur-reply, without this Court's permission.  8/12/2015 Letter [Docket No. 66].  Mr. Epstein claims that the sur-reply serves as "Plaintiffs' Notice of Supplemental Authority as permitted by numerous New Jersey District Court's adaption of" Federal Rule of Appellate Procedure 28(j).[22]  Id. (citing Atkins v. Capri Training Ctr., Inc., 2014 WL 4930906, at *10 (D.N.J. Oct. 1, 2014), appeal dismissed (Feb. 6, 2015) and Hoffmann-La Roche Inc. v. Apotex Inc., 2013 WL 323335, at *2 (D.N.J. Jan. 25, 2013)).  As a

---

[21] In addition, the Court finds that the expenditure of 1.4 hours, as set forth in billing entries [427] to [432], was unnecessary.  While there was some confusion on the part of the parties as to the hearing procedure – and the Court held a brief conference, see billing entry [432], 0.5 hours is sufficient.  Accordingly, 0.9 hours will be disallowed.

[22] FRAP 28(j) reads, in relevant part:

**Citation of Supplemental Authorities.** If pertinent and significant authorities come to a party's attention after the party's brief has been filed--or after oral argument but before decision--a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations.  The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally.  The body of the letter must not exceed 350 words.

preliminary matter, the Federal Rules of Appellate Procedures obviously do not apply in the District Court.  Additionally, the district court cases cited by Plaintiff do not stand for the proposition for which Mr. Epstein uses them.  Neither Atkins nor Hoffman-La Roche apply a District of New Jersey "adaption" of FRAP 28(j), as Mr. Epstein suggests.  Rather, many courts in the District of New Jersey permit the filing of a notice of supplemental authority, but only with leave of the court either via the filing of a formal motion or an informal request for leave to file such a notice.  See, e.g., Ocasio v. CoreLogic Credco, LLC, No. CV 14-1585 (NLH/JS), 2015 WL 5722828, at *5 (D.N.J. Sept. 29, 2015) (granting defendant's motion to provide supplemental authority in support of summary judgment motion); City Select Auto Sales, Inc. v. David Randall Associates, Inc., 296 F.R.D. 299, 304 n. 1 (D.N.J. 2013) (granting parties' motions for leave to cite supplemental authority); Krug v. Focus Receivables Mgmt., LLC, 2010 WL 1875533, at *2 n. 1 (D.N.J. May 11, 2010) (granting plaintiffs' motion to submit supplemental authority); Smith v. Johnson & Johnson, 2008 WL 5427802, at *13 (D.N.J. Dec. 30, 2008), order aff'd, appeal dismissed, 593 F.3d 280 (3d Cir. 2010) (denying plaintiff's motions to file supplemental authority).[23]

---

[23] Regardless, the Court reviewed Mr. Epstein's letter, notifying the Court of a recent decision of the Ninth Circuit

The unauthorized sur-reply was a mere two page document, yet Mr. Epstein billed 2.9 hours, or $1,450, preparing it.  <u>See</u> billing entry [438].  Nonetheless, the unauthorized submission prompted the Defendants to expend resources and respond. Plaintiffs' sur-reply was unauthorized and unhelpful.  The three hours billed for drafting the letter and reviewing Defendants' response will not be permitted.[24]

By Opinion dated August 15, 2015, the Court found that Plaintiffs were the prevailing parties, but that a reduction in fees was "clearly warranted given the bad faith conduct of Mr.

---

Court of Appeals, <u>T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.</u>, 806 F.3d 451 (9th Cir. 2015), <u>cert. denied sub nom. San Diego Unified Sch. Dist. v. T.B.</u>, 136 S. Ct. 1679 (2016). Ultimately, the Court did not rely upon Plaintiffs' supplemental authority in its August 2015 Opinion.  The decision did not present a significant change in the relevant law and merely explained that "it should be recognized that the statute specifies that the comparison of the settlement offer versus the result of litigation must be made from the perspective of the parents."  <u>Id.</u> at 478.  This is simply a restatement of the statute itself, which states that "[a]ttorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if . . . the court or administrative hearing offer finds that the relief finally obtained by the parents is not more favorable <u>to the parents</u> than the offer of settlement."  20 U.S.C. § 1415(i)(3)(D)(i)(III) (emphasis added).

[24] The following entries will not be permitted:

| | | |
|---|---|---|
| **[438]** | 08/12/15 draft/research MSJ 28j letter [66] | 2.9/$1,450 |
| **[440]** | 08/21/15 review/analyze BG 28j letter Opposition [68] | 0.1/$50 |

Epstein."   8/15/2015 Opinion at 35 [Docket No. 69].   The Court's

ruling explicitly left only two issues that needed to be

briefed:

> The Court will need to have a better understanding of
> how the discovery Plaintiffs' counsel insisted upon
> before responding to Defendants' requests affected, if
> at all, Plaintiffs' demands.  It seems it did not.
> Additionally, Plaintiffs' apparent insistence upon a
> neuro-psychologist to provide training to the staff
> responsible for implementing the IEP appeared to be a
> "stumbling block" that protracted the litigation.
> Defendants viewed this demand to be impermissible
> under IDEA.  Thus, Plaintiffs' basis for insisting
> upon such relief will need to also be developed.  In
> the end, it may be that attorneys' fees should be
> limited to the filing of the Petition only.  The
> parties will need to brief these issues and the record
> may need to be further developed.  The Court will
> convene a conference to set a briefing schedule.

Id.

It should have been obvious that further discovery was not

needed, but that the Court needed a better understanding of

Plaintiffs' positons as to why they delayed settlement of this

matter.  Yet, Plaintiffs expended hours upon hours seeking

discovery before this Court put a stop to it.  Pursuant to

Magistrate Judge Schneider's Scheduling Order on October 8,

2015,[25] Plaintiffs were directed to "serve a letter brief

---

[25] Suspiciously, Mr. Epstein did not bill for reviewing this
Scheduling Order [Docket No. 75], even though he billed for
reviewing all other orders, including Magistrate Judge
Schneider's Standing Order [Docket No. 76], which Judge
Schneider issued minutes after his Scheduling Order.  This Court
cannot help but think that this gave Mr. Epstein "cover" to
offer an excuse for his late filing.

regarding whether plaintiff is entitled to discovery in connection with plaintiffs' motion for attorney's fees and costs by 10/22/2015." See Scheduling Order [Docket No. 75].[26]

Plaintiffs failed to timely comply.  More than one month later, on November 15, 2015, Plaintiffs filed a "First Motion for Discovery" [Docket No. 77].  The filing was in blatant disregard of Judge Schneider's Order.  It was late.  It was not a letter brief.  It failed to set forth what discovery was needed and why.  It is hard to comprehend Mr. Epstein's flagrant disregard of court orders.  These fees will not be allowed.

Because it appeared to this Court that Plaintiffs were, once again, attempting to drag out the proceedings under the guise of the need for discovery, the Court ordered oral argument.  The parties appeared before the Court on December 9, 2015 to address Plaintiffs' improper filing of a Motion to Compel Discovery.  At the hearing, Mr. Epstein took the remarkable position that Judge Schneider's September 2, 2015 Order requiring discovery was still in effect even though Judge Schneider subsequently ordered Plaintiffs to serve a letter

---

[26] Incredulously, in the interim, Plaintiffs filed a request for default after this Court ruled [Docket No. 79].  The Court immediately issued an order denying the request as frivolous [Docket No. 80].  Plaintiffs prudently seek no reimbursement for the time expended drafting the request for default, see billing entry [457], though Plaintiffs do seek reimbursement for the time spent reviewing the Court's denial of the request, see billing entry [458].  The latter will be denied.

brief addressing why discovery was even necessary.  It was, and is, a specious argument.  Mr. Epstein's position as to why the Plaintiffs needed discovery was almost surreal.  For what?  Mr. Epstein answered the question as follows:

> MR. EPSTEIN: We had no discovery in this case, we had no disclosure in this case, we had no answer in this case, I don't know what their defenses are and we don't -- we don't have the underlying facts as to what happened with the discovery, why it was delayed for three months, and we don't have the underlying facts as to what was the problem with the defense agreeing to the neurophych [sic] to monitor and consult here.

12/9/2015 Tr. 5:15-22 [Docket No. 87].  But Defendants from almost day one were not interested in pursuing defenses then or now.  Sadly, this Court remains firmly convinced that Mr. Epstein sought discovery solely to delay this case and churn fees.  Accordingly, 11.9 hours related to this misconduct will be disallowed.[27]

What remains are the fees spent by Plaintiffs in preparing their motion for fees.  By this Court's calculation, Plaintiffs

---

[27] The following entries related to the discovery issue are denied in their entirety:

| | | |
|---|---|---|
| **[451]** | 10/07/15 draft joint discovery plan [74] | 1.7/$850 |
| **[454]** | 11/25/15 draft/research/discovery motion as ordered [77] | 6.1/$3,050 |
| **[456]** | 11/30/15 review BG letter [78] | 0.1/$50 |
| **[458]** | 12/01/15 review order [80] | 0.1/$50 |
| **[459]** | 12/09/15 prepare/attend 1.0 hour hearing review minute entry [81] | 3.5/$1,750 |
| **[460]** | 12/10/15 review/analyze order/conference clients [82] | 0.4/$200 |

seek $16,800 related solely to the fee pleadings.  See billing
entries [461]-[479].  This amount is excessive.  From January 9,
2013 to August 27, 2013, Plaintiffs' counsel billed $13,000 for
reviewing the Plaintiffs' records, meeting with experts,
reviewing expert reports, and filing a due process petition.
See Billing entries [2]-[118].  Yet, in comparison, from
December 28, 2015 to February 23, 2016, Plaintiffs' counsel
billed significantly more, including $2,500 which was
inexplicably billed for "Review [of] Administrative and District
Court record and transcripts." See billing entry [461].
Something is wrong with this picture.  The Court will therefore
disallow all fees related to the fee application, see billing
entries [461]-[479], except for four hours to account for the
preparation of Plaintiffs' application for fees relating to the
filing of the due process petition, which this Court will allow.

Accordingly, for the period between the filing of the
Complaint [329] to the conclusion of this matter [479], the
Court finds that Mr. Epstein reasonably billed 25.6 hours.  The
Court, however, is compelled once again to ask whether this
number should be reduced further in light of Mr. Epstein's
unprofessional, combative, and dilatory conduct.  And, once
more, the answer is unmistakably clear -- these fees must be
reduced.

At every step in this litigation, Mr. Epstein has done nothing except foster delay, waste resources, and engender ill-will with a School District that was willing to provide J.L. the education the Plaintiffs sought.  To grant him reasonable attorney's fees for this conduct, without the reduction that is mandated by IDEA, would merely reward his inappropriate and unacceptable conduct.  See 20 U.S.C. § 1415(i)(3)(F) ("whenever the court finds that . . . the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy . . . the court shall reduce, accordingly, the amount of attorney's fees awarded under" IDEA) (emphasis added); Johnson, 949 F.2d at 1004 ("[A]s Congress recognized when it mandated reduced fees for a parent who 'unreasonably protracted the final resolution,' needless litigation frustrates the [IDEA's] objectives by fostering delay, exacerbating ill-will among parties who should cooperate in educating the handicapped child, and wasting the resources of all concerned.").

As explained more fully above, see supra Section II.A. pp. 30-33, where a parent's attorney unreasonably protracts the resolution of the litigation or engages in outrageous and unconscionable conduct, a court may deny an award of fees altogether.  See, e.g., M.G., 386 F. App'x at 188 n. 3, 189 (finding that "[i]f after following the proper procedures, the

Court remains convinced that Epstein's hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all" and noting that "the egregiousness of [Mr. Epstein's] conduct alone could plausibly justify the outright denial of attorney's fees"); Deptford, 279 F. App'x at 126 n. 2 (finding that "an award of attorneys' fees would not be proper on the particular facts of this case . . . the relief achieved here was 'scant and unimpressive,' . . . Moreover, Appellees' attorney [Mr. Epstein]--either through gross carelessness or worse-- initially sought fees that included 60 hours billed in a single day."); J.T., 118 F. App'x at 607 (affirming district court's decision to award no fees because parents and their attorney, Mr. Epstein, unreasonably and unnecessarily delayed the resolution of the dispute).  Likewise, when the prevailing party acts in bad faith and engages in dilatory tactics, a court may reduce the fee award.  See Graziano, 950 F.2d at 114 n. 13; Paoli, 221 F.3d at 463.

This Court reiterates its finding that Mr. Epstein has unnecessarily and unreasonably protracted the resolution of this litigation for years.  What's more, he has done so in an unprofessional, at times unethical, and hostile manner. Accordingly, the Court will reduce Mr. Epstein's reasonable attorney's fees by approximately seventy-five percent.  In this

Court's view, any higher award would only serve to undermine IDEA's objectives and provide Mr. Epstein with an unwarranted windfall.  The Court will allow Plaintiffs to recover fees for 6.5 hours billed by Mr. Epstein at the applicable reasonable hourly rate, which is yet to be determined.

### C. Pre-Due Process Petition

Of the fees billed prior to the filing of the due process petition this Court will permit, several appear to relate to clerical tasks.  Mr. Epstein affirms in his Affidavit of Services that he did not have any paraprofessionals work on the case, but that tasks he performed "which could have been performed by a paralegal were billed at $150 per hour." Affidavit of Services ¶ 25 [Docket No. 83-2].  Yet, the Court does not find even <u>one</u> entry where Mr. Epstein billed at $150 per hour although he billed for many clerical tasks.[28]

Based on the description, the tasks described in the following billing entries should have been billed at the para-professional rate of $150 per hour: [3]-[7]; [10]-[12]; [16]; [29]; [31]; [34]; [36]; [40]; [43]-[44]; [48]; [63 (3 hours)];

---

[28] Defendants have not objected on this ground but this Court has an obligation to ensure that Mr. Epstein's representations to the Court are true.  <u>See</u> <u>McKenna</u>, 582 F.3d at 459 n. 13

[64]-[65]; [73]; [83]-[86]; [98]; [100]; [102]; [113]; [116];

[119]; [392]; [394]; [436]; [439]; and [445].[29]

---

[29] The following billing entries are disallowed as
duplicative or subsumed within another entry.  If two entries
were made on the same day, for the same or similar services, the
Court disallowed the greater.

**[22]** 2/15/13 from KL: dr. nagel [sic] expert
        report                                   0.2/$100
        (Denied as duplicative of [24])
**[71]** 6/10/13 from KL: update case status     0.1/$50
        (Denied as duplicative of [70])
**[88]** 7/26/13 prep and attend telephone       0.5/$250
        conference with DL
        (Denied as duplicative of [90])
**[122]** 8/27/13 KL: case status                0.1/$50
        (Denied as duplicative of [123])
**[128]** 08/30/13 case status                   0.1/$50
        (Denied as duplicative of [129])
**[141]** 09/09/13 OSEP: mediation/resolution Notice  0.1/$50
        (Denied as duplicative or subsumed within [137])
**[142]** 09/10/13 OSEP: mediation/resolution Notice  0.1/$50
        (Denied as duplicative or subsumed within [137])
**[150]** 09/19/13 OSEP: resolution notice       0.1/$50
        (Denied as duplicative or subsumed within [137])
**[161]** 09/28/13 Review OSEP: transmittal notice  0.1/$50
        (Denied as duplicative or subsumed within [156])
**[189]** 10/07/13 kl: conference call while
         driving the court [sic]                 0.5/$250
        (Denied as improper double billing)
**[252]** 12/6/13 DN: review final report        0.4/$200
        (Denied as duplicative of [254])
**[253]** 12/6/13 DN: final report               0.2/$100
        (Denied as duplicative of [254])
**[257]** 12/7/13 DN: final report               0.2/$100
        (Denied as duplicative of [256])
**[272]** 12/9/13 DN: final report               0.1/$50
        (Denied as duplicative of [271])
**[283]** 12/14/13 KL: case status Office conference
         with clients                            0.7/$350
**[285]** 12/14/13 KL: Analysis of offers         0.3/$150
**[286]** 12/15/13 KL: Review DN bill             0.1/$50
        (Each denied as duplicative or subsumed within the
        others)

Accordingly, the Court will permit 6.9 hours, the ones identified above, at the paraprofessional rate and the remaining 19.1 pre-petition hours at the reasonable hourly rate, to be determined.

### D. **Total Reasonable Hours Expended**

Mr. Epstein, as the attorney for the prevailing party, is entitled to "a reasonable fee, not a windfall." M.G., 386 F. App'x at 189.  Accordingly, as set forth above, Plaintiffs are entitled to recover attorney's fees for 19.1 hours billed prior to filing the due process petition and 6.5 hours billed during the federal court litigation, for a total of 25.6 hours, plus 6.9 hours at the paralegal rate of $150 per hour.  For the reasons set forth below, the Court must a hold a hearing to

---

**[443]** 9/2/15 from BG: conference dates                    0.1/$50
        (Denied as duplicative of [442])
**[444]** 9/2/15 from BG: conference dates                    0.1/$50
        (Denied as duplicative of [442])
**[447]** 9/2/15 respond to BG: reschedule initial
          scheduling conference follow-up                     0.1/$50
        (Denied as duplicative of [446])
**[449]** 9/3/15 review BG letter to reschedule
          conference [72]                                     0.1/$50
        (Denied as subsumed within [446]).

The Court cannot help but note that on August 27, 2013, Mr.
Epstein has five billing entries entitled "KL: case status."

determine the reasonable hourly rate to be applied in this matter to the 25.6 attorney hours.

Even assuming the hourly rate that Plaintiffs request, Plaintiffs would be entitled to recover a total amount of $12,800 in reasonable attorney's fees.  In this Court's view, this is the type of award that would have appropriately been recovered in a straightforward case.  This could have been a straightforward case, if only Mr. Epstein had litigated in good faith from the start.  Had he done so, Mr. Epstein would have prepared and filed the due process petition.  The matter would have been resolved expeditiously, as Defendants were eager to accede to Plaintiffs' reasonable demands.  J.L. would have started the school year with the accommodations sought in the due process petition instead of being forced to wait until the following semester.  Plaintiffs would have then recovered their reasonable attorney's fees to properly compensate them for reaching the best result for J.L. -- a successful, quick, and amicable resolution to the dispute.

### E. Reasonable Hourly Rate

To award Plaintiffs reasonable attorney's fees, this Court "must calculate the amount of the award beginning with the lodestar, which is a reasonable hourly rate multiplied by a reasonable number of hour expended." Ullman v. Superior Court of Pennsylvania, 603 F. App'x 77, 80 (3d Cir. 2015) (citing

Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 177 (3d Cir.
2001).  As outlined above, the Plaintiffs are entitled
attorney's fees for 25.6 hours billed at a reasonable hourly
rate, to be determined by this Court.

"[A] reasonable hourly rate should be determined by
examination of the prevailing market rates in the relevant
community at the time of the fee petition, not the time the
legal services were performed.  A court should assess the skill
and experience of the prevailing party's attorneys and compare
their rates to the rates prevailing in the community for similar
services by lawyers of reasonably comparable skill, experience,
and reputation." L.J. ex rel. V.J. v. Audubon Bd. of Educ., 373
F. App'x 294, 296 (3d Cir. 2010) (citing Lanni v. New Jersey,
259 F.3d 146, 149 (3d Cir. 2001); Rode v. Dellarciprete, 892
F.2d 1177, 1183 (3d Cir. 1990)).

Plaintiffs, as the party seeking to recover attorney's
fees, carry "the initial burden of 'producing sufficient
evidence of what constitutes a reasonable market rate for the
essential character and complexity of the legal services
rendered in order to make out a prima facie case.'" L.J., 373
F. App'x at 296 (quoting Lanni, 259 F.3d at 149).  That burden
is ordinarily met through the submission of "affidavits prepared
by other attorneys in the relevant legal community." Access 4
All, Inc. v. Boardwalk Regency Corp., 2012 WL 3627775, at *4

(D.N.J. June 28, 2012).  Where that initial burden is met, the burden shifts to the party disputing the fees to rebut the reasonableness of the proposed hourly rate with record evidence. L.J., 373 F. App'x at 296 (citing Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997)).  The Third Circuit has held that "[i]f reasonable market rates are in dispute, a hearing must be conducted."  M.G., 386 F. App'x at 189 (emphasis in original) (quoting Lanni, 259 F.3d at 149).

Plaintiffs claim that, in light of Mr. Epstein's skill and expertise in the area of special education law, as well as his lengthy legal career, Mr. Epstein is entitled to an hourly rate of $500.  Plaintiffs submit the affidavits of three attorneys, among other documents, in support of the requested hourly fee. Appendix to Affidavit of Services.  Defendants, in turn, challenge this rate as excessively high compared to attorneys of similar skill, experience, and reputation in the relevant market.[30]  In support of their challenge, Defendants submit a certification from Mr. Gorman setting forth that he has consulted with various well-respected, experienced attorneys who represent children and parents in special education matters and

---

[30] Mr. Epstein has been reminded more than once "of his obligation to not treat 'his fee application as an opening offer rather than a carefully calculated and honest fee request.'" T.B. v. Mount Laurel Bd. of Educ., 2011 WL 2473327, at *9 (D.N.J. June 20, 2011) (quoting M.G., 2009 WL 3489358, at *6). Apparently, he has not heeded this reminder.

that none of these attorneys have an hourly rate exceeding $400.
Defs. Opp. Br. at 22 [Docket No. 88]; Gorman Certification
[Docket No. 88-1].[31]  The Court finds this certification to be
sufficient to contest Plaintiffs' requested hourly rate.
Accordingly, since Defendants dispute Mr. Epstein's hourly rate,
this Court must hold a hearing as to the reasonable market rate
for attorneys of similar skill, experience, and reputation to

---

[31] Mr. Epstein claims that "the (none too happy) attorneys
Defendants' counsel certified were 'consulted' without their
informed consent.  Defendant's counsel failed to disclose to
them that the purpose of his stealth inquiry was to covertly
support Defendant's opposition seeking a lower rate for their
parent attorney practice rate in this Court."  Pls. Reply Br. at
12 n. 1.  In response, Mr. Gorman requested leave to file a
limited sur-reply, which the Court now grants, and submitted a
letter stating that he had obtained the informed consent of the
attorneys with whom he consulted regarding their hourly rates.
He also submitted signed certifications from each of the five
attorneys establishing the same.  3/4/2016 Letter [Docket No.
92].
        The Court is appalled, but unsurprised, by the cavalier way
in which Mr. Epstein hurls such outlandish and serious
accusations without an iota of evidence.  To add insult to
injury, Mr. Epstein subsequently filed a motion requesting that
the Court deny Defendants' request to file a sur-reply or, in
the alternative, for leave to take discovery from the lawyers
with whom Mr. Gorman consulted [Docket No. 93].  This is yet
another example of Mr. Epstein's scorched earth litigation
strategy.  The Court, of course, grants Mr. Gorman's request to
file the limited sur-reply.  Any attorney should be granted the
opportunity to defend himself against such baseless accusations.
To the extent Mr. Epstein moves for leave to take discovery from
the attorneys with whom Mr. Gorman consulted regarding whether
Mr. Gorman obtained their informed consent, the motion is
denied.  The Court finds that such discovery is merely a
collateral issue that Mr. Epstein seeks for the sole purpose of
continuing to rack up fees.  The Court will not tolerate such
conduct any further.  Accordingly, Plaintiffs' motion [Docket
No. 93] is denied in its entirety.

Mr. Epstein, before it can determine the total amount of
attorney's fees to which Plaintiffs may be entitled.

While this Court is not yet in a position to determine the
reasonable hourly rate in this matter, it feels obliged to
briefly address Plaintiffs' position that they are entitled to a
$500 per hour rate because of Mr. Epstein's extensive experience
in special education matters.

Mr. Epstein cites to a separate action before Judge Noel H.
Hillman, J.R. v. N.J. Department of Education, et al., Civil
Action No. 11-5060, in which Judge Hillman approved his
requested hourly rate of $550, as an example of where his
conduct was instrumental in bringing about a settlement and the
Court awarded substantial fees.  See Affidavit of Services ¶ 31;
2/3/2015 J.R. Transcript [Docket No. 83-3].[32]  It is encouraging
to see that Mr. Epstein has litigated one case in good faith in
this District.[33]  Mr. Epstein has had a history in this District

---

[32] Plaintiffs also tout T.B. v. Mount Laurel Bd. of Educ.,
2012 WL 1079088, at *4 (D.N.J. Mar. 30, 2012), as an example of
a case where the district court granted Mr. Epstein's requested
hourly rate.  In T.B., however, the defendant provided no record
evidence to dispute Mr. Epstein's requested rate.  The district
court held that, without proper evidence to refute the requested
rate, it was "constrained to approve Mr. Epstein's rate of $400
per hour as reasonable."  Id.  The court nonetheless found that
the number of hours billed by Mr. Epstein was unreasonable and
reduced his requested fee amount.  Id. at *6.

[33] The Court cannot help but note that, since Judge
Hillman's approval of the parties' settlement in J.R., Mr.
Epstein has filed four motions in that matter, seeking to

of engaging in unreasonable behavior and overstating his fees.

See, e.g., M.G., 386 F. App'x at 188-89 ("We agree that the fee

petition submitted by Epstein was seriously deficient.  As the

District Court thoroughly explained, the quality of Epstein's

representation in this case was woeful.  Furthermore, the hours

Epstein billed were not only excessive, but also either grossly

negligent or fraudulent. . . . Considered together, the

inaccuracies and exaggerations that plague Epstein's fee request

seem consistent with the District Court's finding that his

submission constituted an improper attempt to maximize his fee

award, as opposed to a good-faith representation of his billing

rate and the hours he reasonably expended obtaining relief for

M.G."); L.J., 373 F. App'x at 298 (affirming district court's

rejection of Epstein's $400 hourly rate and noting that "[t]he

District Court articulated its reasoning for awarding a number

less than Epstein had been awarded in the past: his skill,

---

enforce and/or modify the terms of the parties' settlement and
an award of additional attorney's fees.  Civil Action No. 11-
5060, Docket Nos. 252, 256, 265, 282.  Additionally, apparently
displeased that his submissions had not been addressed as
quickly as he would have liked, Mr. Epstein sent Judge Hillman a
letter -- oozing with sarcasm -- threatening to seek mandamus if
the court did not address his submissions as soon as possible.
Civil Action No. 11-5060, Docket No. 273 ("Perhaps Your Honor
would prefer Plaintiffs seek mandamus.").  The Court makes no
observations as to the merits of Mr. Epstein's submissions in
that action, but instead merely observes that Mr. Epstein's
take-no-prisoners approach to litigation remains in full swing,
and Mr. Epstein continues to incur fees, over a year and a half
after Judge Hillman approved the parties' settlement.

experience, and performance in the litigation before the
District Court was unprofessional and contentious.  In the
District Court's view, this unprofessionalism also warranted a
rate at the low end of what had been recently commanded for
cases of similar complexity.  This was a reasonable
determination."); Deptford, 279 F. App'x at 126 n. 2 (noting
that, even if plaintiffs were the prevailing party, "an award of
attorneys' fees would not be proper on the particular facts of
this case.  As the District Court noted, the relief achieved
here was 'scant and unimpressive,' and Appellees achieved no
relief on the LRE issue.  Moreover, Appellees' attorney [Mr.
Epstein]--either through gross carelessness or worse--initially
sought fees that included 60 hours billed in a single day.");
C.G. & R.G. v. Winslow Twp. Bd. of Educ., 2015 WL 7760356, at *9
(D.N.J. Dec. 2, 2015) (accepting stipulated $425 hourly rate,
but noting "Mr. Epstein's history of egregious conduct in fee
requests in the District of New Jersey" and of "grossly
overstating his fees," and finding that "Mr. Epstein's
inappropriate reaching for fees shocks the conscience of the
Court."); T.B., 2011 WL 2473327, at *4-5 ("Mr. Epstein has been
repeatedly warned about his carelessness. . . . there are only
so many times Mr. Epstein can come before the Court claiming
that an error in his favor was a careless error rather than

professional incompetence before the neglect becomes inexcusable.").

Mr. Epstein's pattern of overstating his fees and engaging in unprofessional and unreasonable behavior has continued into this litigation.  In this Court's view, to say that Mr. Epstein's "skill, experience, and performance in the litigation before" this Court has been "unprofessional and contentious" is an understatement.  See L.J., 373 F. App'x at 298.  Mr. Epstein's skill, experience, and reputation will and must be incorporated into the Court's determination as to the appropriate reasonable hourly rate.  Carey v. City of Wilkes-Barre, 496 F. App'x 234, 236 (3d Cir. 2012) (reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)); L.J., 373 F. App'x at 296 ("A court should assess the skill and experience of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

Accordingly, at this time, the Court finds that Plaintiffs are entitled to attorney's fees for 25.6 hours billed at an hourly rate to be determined at a later date after the Court

conducts a hearing, $1,035 in paralegal fees for 6.9 hours billed at an hourly rate of $150, and $11,314.34 in costs and retainer and expert fees.  The Court reserves as to the total amount of attorney's fees to which Plaintiffs are entitled until such a time that the Court determines the appropriate reasonable market rate after a hearing or the parties stipulate to a reasonable hourly rate.[34]

### F. Costs and Expert Fees

In addition to attorney's fees, Plaintiffs also seek to recover $11,314.34 in costs and fees, representing $2,314.34 in administrative and other costs, such as filing fees, traveling expenses, and copying services, $8,000 in retainer fees, and $1,000 in expert fees for services rendered by Dr. Nagele between August 17, 2013 and December 10, 2013.  Appendix to Affidavit of Services at 14 [Docket No. 83-3].

---

[34] The Court notes, once again, for the benefit of the parties that, even at Mr. Epstein's requested $500 per hour rate, Plaintiffs would only be entitled to recover $12,800 in attorney's fees, compared to the initial amount requested of $149,900.  The Court also notes, consistent with the Third Circuit's directive in M.G., that "[i]f, after following the proper procedures, the Court remains convinced that Epstein's hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all." M.G., 386 F. App'x at 189.  The Court further notes that Defendants may likely agree, without conceding the appropriate market rate, to Plaintiffs' requested rate rather than subjecting themselves to another, perhaps lengthy hearing involving the testimony of various attorneys.

Under the IDEA, a prevailing party may recover reasonable attorney's fees and costs related to the litigation.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  While "[t]he fee-shifting provision of [IDEA] authorizes the recovery of reasonable attorneys' fees and other enumerated costs," it "does not authorize a prevailing parent to recover fees for services rendered by an expert educational consultant in IDEA proceedings." A.W. v. E. Orange Bd. of Educ., 248 F. App'x 363, 365 (3d Cir. 2007) (citing Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 294 (2006) (holding that the fee-shifting provision of IDEA does not authorize prevailing parents to recover fees for services rendered by experts in IDEA actions)).  Under Section 504 of the Rehabilitation Act, however, a prevailing party may recover reasonable fees for expert services.  L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist., 2009 WL 2488181, at *2 (D.N.J. Aug. 11, 2009) (noting that "the Rehabilitation Act incorporates the remedies available under the Civil Rights Act of 1964, which specifically provides for the taxation of expert fees.").

Defendants do not contest Plaintiffs' request for $2,314.34 in administrative and other costs and expenses and $8,000 in retainer fees.  Accordingly, Plaintiffs, as the prevailing party, are entitled to reimbursement of these costs pursuant to IDEA and Section 504 of the Rehabilitation Act.

Defendants, however, dispute Plaintiffs' request for $1,000 in expert fees for Dr. Nagele's services.  According to Defendants, Defendants have already paid Dr. Nagele's costs and fees through the final judgment issued by Judge Schuster on January 28, 2014.  Defs. Opp. Br. at 30-31 [Docket No. 88]. Judge Schuster ordered that Defendants pay $5,587 to reimburse the Plaintiffs for expert "expenses incurred for services and evaluations . . . representing the full amount requested." Schuster Order at 3-4 [Docket No. 65-2, Ex. 23].  Defendants also cite to Plaintiffs' December 9, 2013 letter demanding that Defendants reimburse Plaintiffs "$5,587.00 for all out of pocket expenses for privately obtained evaluations and services since 8/28/11."  12/9/2013 Letter ¶ 11.  Accordingly, Defendants contend that the $5,587 already paid by Defendants represents all expert fees and costs incurred by Plaintiffs from August 28, 2011 through the date of Judge Schuster's Order on January 28, 2014 and, therefore, it is impermissible for Plaintiffs to now request reimbursement of additional expert fees incurred during this time period.

Plaintiffs, in turn, claim that $5,587 represented the full amount that Dr. Nagele had billed Plaintiffs as of the date the demand was initially made and, therefore, does not limit Plaintiffs' ability to obtain reimbursement for expert fees billed later.  Plaintiffs note that Dr. Nagele had not yet

billed them this $1,000 at the time they made the demand.  Reply
Affidavit ¶¶ 24, 26-28 [Docket No. 90-2].[35]

The Billing Statement Summary provided to Defendants set
forth a series of expert fees and costs for services rendered
from January 11, 2012 through May 22, 2013.  Billing Statement
Summary [Docket No. 65-1, Ex. 8].  The total amount billed at
that time was $5,587.  Id.  As Plaintiffs had not yet been
billed the additional $1,000 by Dr. Nagele, they could not have
included this expense in its demand.  Perhaps Plaintiffs should
have been more forthright with Defendants regarding the
inevitable additional expert fees, for, while it is true that
they had not yet been billed yet, many, if not all, of the
services had already been rendered by the time of Plaintiffs'
request.  Nonetheless, Plaintiffs did demand that Defendants
reimburse them for an amount "TBD for all attorney's fees and
expert's fees incurred in the case."  12/9/2013 Letter ¶ 12.

---

[35] Plaintiffs appear to suggest that this "expert fee" would
not have been covered in Plaintiffs' demand for reimbursement
"for all out of pocket expenses for privately obtained
evaluations and services since 8/28/11" rendered by Dr. Nagele,
regardless of when the services were rendered or when Plaintiffs
were billed.  See Reply Affidavit ¶¶ 24-26 ("The $5,587 in
reimbursements . . . did not include expert's fees.  Plaintiffs
did not request reimbursement for their expert's fees.
Plaintiffs['] only expert fee is $1,000 for Dr. Nagele's expert
services from 8/17/13 to 12/10/13.").  The Court sees no
relevant distinction between the expenses covered by the $5,587
amount and the expenses for which Plaintiffs seek reimbursement
now, except for when the Plaintiffs were billed.

The Court finds that the parties' agreement did not limit reimbursement of expert fees for the entire litigation to $5,587.  That amount represented merely "all out of pocket expenses" for experts' services at the time the demand was made, but Plaintiffs had not yet been billed the additional $1,000 by Dr. Nagele.  Although Plaintiffs did not disclose the additional $1,000 in expert fees in the underlying administrative proceeding, Plaintiffs, as the prevailing party, are entitled to reimbursement of expert fees under Section 504 of the Rehabilitation Act.  Accordingly, Plaintiffs' request for reimbursement of this expert fee will be granted.

### G. **Defendants' Request for Fees**

Defendants also contend that they are entitled to recover their own attorney's fees under Federal Rule of Civil Procedure 11.  Defs. Opp. Br. at 32-33 [Docket No. 88].  Rule 11(b) provides, in relevant part:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; . . . .

Fed. R. Civ. P. 11(b)(1)-(2).

Defendants argue that, throughout this litigation, Plaintiffs have acted frivolously, "improperly, unnecessarily delayed this proceeding, and needlessly increased the cost of litigation." Defs. Opp. Br. at 32. Therefore, in Defendants' view, Plaintiffs have violated Rule 11(b) and should be sanctioned pursuant to Rule 11(c).

Rule 11(c)(1), however, states that a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violated Rule 11(b)." Additionally, Rule 11(c) contains a so-called safe harbor provision which dictates that the motion must first be served upon the adversary, but not filed for twenty-one days, to allow the adversary to take corrective action. Fed. R. Civ. P. 11(c)(2). Moreover, sanctions can only be imposed "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1). Accordingly, Defendants' request for Rule 11 sanctions against Plaintiffs in the form of attorney's fees, which was made in their brief in opposition to Plaintiffs' motion for fees, was improperly made and will be denied.[36]

---

[36] The Court notes that, while it is well aware of its power to impose sanctions on its own, pursuant to Rule 11(c)(3), it chooses not to do so at this time. The Court nonetheless shares Defendants' concerns regarding Plaintiffs' inappropriate conduct throughout this litigation. While Defendants' request for sanctions was improperly made, it was not frivolous, as Plaintiffs claim. See Pls. Reply Br. at 14. Furthermore, the Court observes that sanctions pursuant to Rule 11(c) "must be

Metro. Life Ins. Co. v. Kalenevitch, 502 F. App'x 123, 125 (3d Cir. 2012) (affirming district court's denial of sanctions request that was not made by separate motion and did not comply with the twenty-one day safe harbor period).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for attorney's fees [Docket No. 83] is granted, in part, denied, in part, and reserved, in part. The Court shall hold a hearing, on a date to be agreed upon by the parties and presented to the Court, regarding the appropriate reasonable hourly rate. The Court, in its discretion, declines to exercise supplemental jurisdiction over Plaintiffs' only remaining state law claim, see 28 U.S.C. § 1367(c)(3), and, therefore, the Plaintiffs' Motion to Amend [Docket No. 42] is denied as moot.[37] Finally, Plaintiffs' motion to deny Defendants' request for leave to file

---

limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). Given Mr. Epstein's long history of questionable conduct in this District, see supra Section II.E. pp. 57-60, the Court is skeptical that any sanction would actually deter Mr. Epstein from engaging in similar litigation tactics in the future. The Court, nevertheless, hopes that the significant diminution of Plaintiffs' fees alone, as outlined above, will serve these purposes.

[37] By Order dated August 25, 2015, this Court administratively terminated Plaintiffs' Motion to Amend, pending the resolution of Plaintiffs' request for attorney's fees [Docket No. 70]. At the time, the Court did not anticipate that the fees portion of this matter would take as long as it has.

a sur-reply [Docket No. 93] is denied.  An appropriate Order

shall issue on this date.

                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated: August 19, 2016